GEORGE LEMON ET AL. *v.* J. W. PEYTON ET AL., COMMISSIONERS.

| 64 | 161 |
| 75 | 228 |

1. LOCAL OPTION.   *Interest of supervisor in respect thereto.   Whether sufficient to disqualify as judge.*

   A member of a board of supervisors who canvasses for or signs a petition for an election under the "local option" law is not thereby disqualified from acting on such petition in his official capacity in pursuance of the terms of the law.   The interest which disqualifies a judge is pecuniary, not political.

2. SAME.   *Writ of prohibition.   When the proper remedy.*

   The propriety of the rulings of a board of supervisors in refusing to hear evidence as to the genuineness of the signatures to a petition asking for an

64 MISS.—11

election under the " local option " law, and in permitting new names to be added after the petition was first presented, cannot be called in question by petition for a writ of prohibition, but only by appeal.

3. LOCAL OPTION.    *Electors who are qualified.    Case in judgment.*
    The Board of Supervisors of the County of H., in passing on the sufficiency of a petition for an election under the "local option" law, found that it was signed by one-tenth of the voters of the county " who are qualified to vote for members of the legislature " in said county, without stating that such voters were qualified according to the last registration books.    *Held,* that this was sufficient, as one who is qualified to vote for a member of the legislature is a qualified elector for any election under our constitution.

4. CONSTITUTIONAL LAW.    *Sale of liquors.    Revenue from licenses.    Common schools. Provisions for maintaining.*
    An act of the legislature which provides that the sale of liquors shall be prohibited in any county where a majority of the legal voters of such county shall so decide, at an election to be held in accordance with the terms of the act, does not violate the scheme of our constitution for the maintenance of common schools nor the provisions of § 6, article viii, of the constitution, which declares that " all moneys received from licenses granted under the general laws of the State for the sale of intoxicating liquors or keeping dram-shops" shall be devoted to the support of common schools.

APPEAL from the decision of HON. J. T. WHARTON, Judge of the Ninth Judicial District.

On March 11, 1886, the legislature passed an act entitled " An Act for preventing the evils of intemperance by local option in any county in the State by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of each county, to provide penalties for its violation, and for other purposes."

This act, in § 1, provides " that upon application by petition, signed by one-tenth of the voters who are qualified to vote for members of the legislature in any county in this State, addressed to the board of supervisors of said county, it shall be the duty of the board of supervisors to order an election, to be held at places of holding elections, for members of the legislature in such county, to take place within forty days after the reception of the petition, to determine whether or not such spirituous liquors as are mentioned in the sixth section of this act shall be sold within the limits of any such county."

On July 6, 1886, a petition was filed with the Board of Supervisors of Hinds County, in accordance with the provisions of the above-mentioned act, praying that an election be held in said county under this law.

On July 9, 1886, the board of supervisors found that the petition "was signed by one-tenth of the voters of said county who are qualified to vote for members of the legislature in said county," and ordered that the election be held, as prayed for, on August 10, 1886, and appointed J. W. Peyton, D. G. Howell, and J. W. Langley commissioners to hold the same.   On July 13, 1886, George Lemon and others, on behalf of themselves and other voters and taxpayers of Hinds County, filed a petition before the judge of the Ninth Judicial District, praying a writ of prohibition to restrain the above-named commissioners from holding this election. The grounds upon which the prayer was based are set out sufficiently in the opinion of the court.   The commissioners, defendants, demurred to the petition for prohibition and made a motion to dismiss it.   The judge sustained the demurrer and dismissed the petition, and the petitioners appealed.

*Calhoon & Green*, for the appellants.

1. The act (1886, p. 36) creates a court of limited, special jurisdiction, and provides a specific method of procedure.   *Crisler* v. *Morrison*, 57 Miss. 798.

The board of supervisors, when it commences to consider the petition under this act, is not exercising any of the jurisdiction conferred by the constitution or general statutes, but is a mere body of persons brought into existence as a court by the provisions of this act. The composition of the court is of the same nature, though inferior in degree, as a special court for the trial of "unlawful detainer" causes.   See *Warren* v. *African, etc.*, 50 Miss. 223.  •

No proceedings can be had not authorized specially by the statute.   *Warren* v. *African, etc., supra.*

2. The petition shows that the members of the special court had signed the petition and canvassed for it.

The petitioners in this special tribunal were the plaintiffs.   They could not also be the judges.

" *Aliquis non debet esse judex in propria causâ.*"

" The slightest degree of pecuniary interest is an insuperable objection." Bouvier L. Dic., " Incompetency." *Pearce* v. *Atwood,* 13 Mass. 341.

Judge *et suis sociis* cannot be a party. 4 Comyn. " Justices " 1, 3.

As to degree of interest which disqualifies, see 5 Bacon Abr., Juries, 343, 4, 5.

Jury act changed rule in great degree. Ib. 345. See also, *Great Charter* v. *Cunnington,* 2 Str. 1173 ; *King* v. *Inhab.,* 4 Term Rep. .71 ; *King* v. *Gudridge,* 5 Barn. & Cress. 459 ; *Queen* v. *Conirs,* 1 Q. B. 467 ; *Queen* v. *Justices,* 6 Q. B. 753 ; Bacon's Abr., Tit. Execution, B. 1, note A.

. Petitioners could not be judges. *Converse* v. *McArthur,* 17 Barb. 410 ; *Oakley* v. *Aspinwall,* 3 Comst., relied on in *Converse* v. *McArthur, supra,* is approved in *People* v. *Jose Ramon de la Guerra,* 24 Cal. 77.

3. The order of the board on the petition is void because it does not *affirmatively* appear therein that one-tenth of the voters qualified to vote for members of the legislature, according to the registration books of the year 1885, had signed said petition. The order recites. (in the present tense) that one-tenth of the voters "who are qualified to vote for members of the legislature " had signed said petition, wholly omitting that the signers were one-tenth of the qualified voters according to the registration books of 1885.

The statute provides affirmatively that the standard of jurisdiction shall be one-tenth of the number who were registered voters on the books of the year before. One-tenth of the *present* registration, with its additions or diminutions of the present year, is not the standard.

Hence, when the board found that one-tenth of those " who are qualified," etc., signed the petition, it did not find the necessary jurisdictional fact.

The necessary jurisdictional facts not appearing in the order *affirmatively,* it is void. Pearce on Railroads 183 ; *Hawkins* v.

*Carroll,* 50 Miss. 765 ; 31 Miss. 526 ; 51 Miss. 28 ; Ib. 26 ; 55 Miss. 140 ; *Corbett* v. *Duncan,* MS. Op. Bk. L. 619 ; *McCrary* v. *O'Flinn,* MS. Op. Bk. M. 30 ; *McCrary* v. *Rhodes,* MS. Op. Bk. M. 31.

4. This act is unconstitutional.

(1.) In delegating to the people legislative powers.

Code 1880, and acts amendatory thereof, were in force as to license and so continue as the law of the land.   By § 7 of the act these laws are distinctly continued in force until the election is ordered and held.

The question arises whether the legislature can *repeal an existing law* by a vote of the people. It cannot. *Alcorn* v. *Homer,* 38 Miss. 652 ; *Rice* v. *Foster,* 4 Harrington 479 ; *Parker* v. *Com.,* 6 Pa. St. 507 ; *State* v. *Swisher,* 17 Texas 441 ; *Meshiner* v. *State,* 11 Ind. 482 ; *Thorn* v. *Cramer,* 15 Barb. 112 ; *State* v. *Weir,* 33 Iowa 134 ; *State* v. *Court, etc.,* 36 N. J. 72 ; *People* v. *Solomon,* 51 Ill. 55 ; *Fell* v. *State,* 42 Md. 83 ; *Bull* v. *Reed,* 13 Gratt. 90–1 ; *State* v. *Fields,* 17 Mo. 529 ; *Lammert* v. *Tidwell,* 62 Mo. 192 ; *Ex parte Wall,* 48 Cal. 279 ; *Barto* v. *Himrod,* 4 Md. 483.

(2.) The act is unconstitutional in this :   It changes the policy of the constitution for license under a general law for a special prohibition, and thereby defeats the fund appropriated by the organic law to the common schools.

Article viii, § 1 (Const. Miss.), imposes " the duty " on the legislature to provide a uniform system of free public schools. By § 6, article viii, is provided "There *shall be established* a common school fund, which *shall consist of* " * * * * " all moneys received for licenses granted under the *general laws* of the State for the sale of intoxicating liquor or keeping dram-shops," * * * which (amendment 2) is to be paid in money and distributed among educable children according to law.

By the organic law the free schools and their maintenance are provided for.   The mandate is to establish, and the fund is appropriated by the constitution for their support.   The people made the appropriation of certain well-recognized sources of revenue to the schools and left the legislature the duty only to supply deficiencies by law.

License under general laws had been the policy of the State prior to the constitution. *Rohrbacker* v. *City*, 51 Miss. 742.

This policy became embodied in the constitution.

Constitutions will be interpreted in the light of the policy sought to be enforced thereby. *Slaughter House Cases*, 16 Wal. 36.

If a policy is adopted by a constitution the legislature cannot change it. *Breen* v. *Williamson*, 7 How. (Miss.) 14.

The opinion of Judge Sharkey in this case is pronounced "masterly" by Chancellor Kent. 1 Kent's Com. 19.

The policy of the constitution was of weight in *Fant* v. *Gibbs*, 54 Miss. 396.

It was as much a part of constitutional policy to raise the fund in the way designated as it was to have the schools free.

*D. R. Barnett*, on the same side.

It is conceded by all the authorities that the legislature cannot delegate its powers. Its powers being delegated ones, it cannot transfer them ; and it may be added that the principal, the people, cannot revoke or assume the powers conferred by the constitution on the legislature except by the creation of a new organic law.

But, inasmuch as a statute may be made conditional, and to take effect upon the happening of a subsequent event, it is said that the contingency upon which the operation of the statute is made to depend may as well be a popular vote as anything else. *State* v. *Parker*, 26 Vt. 357.

The fallacious argument is used by some authorities that the people only fix the time *when* the law shall go into operation, but the correct statement is that the people say whether or not the law shall go into operation at all.

It is submitted that, whatever validity local option laws may have, they cannot be sustained upon the grounds assigned.

The moment it is conceded the people can be allowed to pass upon the necessity, expediency, or propriety of a law, by determining when it shall go into effect, or, rather, to state the proposition properly, whether such law shall take effect or not, then it is conceded that the legislature has the right to part with and delegate to the people the power to infuse into a law the most

essential requisite of a law, and without which it is nothing, viz.: life.

If these authorities are correct in their reasoning, then it is in the power of every legislature to make *all* laws dependent for their operation upon the will of a majority of voters. The legislature could thus relieve itself from the necessity of passing upon the policy, propriety, or expediency of· all laws. It could be made to shrink into a body for drafting bills, which would have no effect until the people declared they should operate. To this conclusion all would demur, even the courts and writers that make such conclusion inevitable.

*Nugent & Mc Willie,* for the appellees.

1. The proceedings of the board of supervisors are ministerial, and mere irregularities in the exercise of their conceded jurisdiction do not warrant the granting of the writ asked for in this case. The power to award such writ is limited to cases where it is necessary to give a general superintendence and control over inferior tribunals, and it is never allowed except in cases of usurpation or abuse of power, and not then unless other existing remedies are inadequate to afford relief. In other words, the remedy is only employed to restrain courts from acting in excess of their powers, and if their proceedings are within the limits of their jurisdiction, prohibition will not lie. If, therefore, the inferior tribunal has jurisdiction over the subject-matter in controversy, a mistaken exercise of their jurisdiction, or of its acknowledged powers, will not justify a resort to the extraordinary remedy of prohibition. It is only excess of jurisdiction that is dealt with, not errors in the exercise of power. High on Ex. Rem. (2d ed.), pars. 767, 769, 770, 772, 798. See *Cason* v. *Cason,* 31 Miss. 592; *Crisler* v. *Morrison,* 59 Miss. 793, 794, 801,.802.

The jurisdiction of the supervisors ·is conceded, and the only complaint is that they have not done their exact duty in respect to the orderly discharge of their functions. It is true that the unsworn petition suggests that sundry names on the petitions for the election were not signed by the voters, and that the board declined to allow. an issue to be made to test whether such names had been

signed to the documents by the voters or by others for them. But this allegation, if conceded, would not justify the issuance of the writ. The very question presented was left to the supervisors by the statute, and if they failed to allow the objectors the privilege of raising an indefinite number of issues it would constitute a mere error or irregularity.

2. But it is said that members of the board circulated petitions for signatures and were thus disqualified from acting upon the matter. The disqualification hinted at, *thus indirectly*, does not exist. No man, it is true, can be a judge in his own case, but the members of the board had no case to be adjudicated, and no such interest in the proposed election as to be recognized by the courts. The interest, if any existed, was a purely moral interest in having a question of local police submitted to the people of the county for decision at the ballot-box under the mandatory provisions of the statute. This interest, legally considered, is so " remote, trifling, and insignificant, that it may fairly be supposed to be incapable of affecting the judgment or of influencing the conduct of an individual." It is very common for the law, in a certain class of cases, to provide that the members of the board shall audit their own accounts for services rendered the public. There is, in such cases, no adverse party to be affected. Cooley's Constitutional Limitations, pars. 509, 510, 511 (5th ed.), and cases cited; *Richardson* v. *Boston*, 1 Curtis C. C. 250; *Haydenfield & Co.* v. *Towns*, 28 Ala. 425; *Buckinghan* v. *Davis*, 9 Md. 324; *Washington Ins. Co.* v. *Price*, Hopk. Ch. 1; Code of 1880, § 823; *Cason* v. *Cason*, 31 Miss. 592.

3. In connection with the question as to the constitutionality of the " local option law," another difference between confiding to the counties the mere matter of controlling and directing police regulations and general subjects of legislation, the following cases may be referred to : *Babenreyer* v. *Iowa*, 18 Wall. 132; *Bee & Co.* v. *Mass.*, 97 Mass. 33; *Barnes* v. *Supervisors*, 51 Miss. 305; *Cammack* v. *Williams*, 27 Miss. 221; *Commonwealth* v. *Bennett*, 108 Mass.; 110 Mass. 357; 12 Am. Law Reg. 32.

*Brame & Alexander*, on the same side.

1. The statute is a police regulation.    *Foster* v. *Kansas*, 112 U. S. 201.

It is now well settled that such statutes are valid.    Cooley's Const. Lim. 124–5, and cases cited in the notes.

2. The suggestion that the statute violates § 6, article viii, of the constitution relative to the common-school fund is a very novel one.

The section, of course, means that such moneys as shall be received from the sources mentioned shall be paid into the common-school fund.    It does not mean that the legislature shall forever maintain dram-shops, any more than that bawdy-houses and gambling-saloons shall be kept up in order that a revenue may be realized for the violation of the penal laws as to these to support the common schools.

3. Prohibition, like mandamus, is a strict legal right, and only lies in case of a clear legal remedy.    Here the board of supervisors, the tribunal vested by law with the exclusive jurisdiction to ascertain and decide upon the question as to the sufficiency of the petition and all the steps in connection with the election, has ordered it, and the election has been held.    The board, under the statute, was the sole and exclusive judge as to this.

4. The petition shows that the board of supervisors acted clearly right in ordering the election.    It was mandatory on the board to do what was done.    The idea that the board was organized specially and formally to receive the petition as a court of limited and special jurisdiction is based entirely upon error.    We contend that the action of the board, like that of a court, *is* conclusive as to the matters *en pais* decided by it, for there is no appeal and no method of review provided ; but there is no warrant for the contention that it is to be considered in the light of a court organized for a special purpose, as, for instance, a court for the trial of an action of unlawful detainer.

CAMPBELL, J., delivered the opinion of the court.

The petition to prohibit the appointees of the board of supervisors from holding the election ordered sets forth as its grounds an alleged disqualification of the members of the board of super-

visors, because three of them had signed the petition for an election, and two of them had canvassed for signers to it ; that the board had erred in refusing to receive evidence offered by objectors as to the signatures to the petition, and in permitting new names to be added after it was first presented, and because the order of the board is void in that it speaks of voters qualified to vote for members of the legislature. The first ground is untenable, for that would confound all distinction between the functions of one as a citizen and a judge. One does not cease to be a citizen by becoming a judge, and he may vote as his judgment dictates or petition for an opportunity to vote, and does not thereby disqualify himself as a judge in the matter which may come before him. The interest which disqualifies a judge is pecuniary and not political.

The propriety of the rulings of the board of supervisors cannot be called in question by petition for prohibition. That could be done only by appeal.

The point made on the language of the order of the board in speaking of voters qualified to vote for members of the legislature is without force, as one qualified to vote for members of the legislature is a qualified elector for any election under our constitution.

In addition to the grounds set up in the petition, the argument of counsel in this case assails the act of the legislature providing for an election as ordered as unconstitutional on several grounds. Among them is that disposed of by our judgment in *Schulherr* v. *Bordeaux, Sheriff, ante* 59.

Another is that the act contravenes the scheme of the constitution for the support of common schools, because schools are required by that instrument to be maintained, and among the revenues devoted by it to their maintenance are "all moneys received for licenses granted under the general laws of the State for the sale of intoxicating liquor or keeping dram-shops." It is urged that the constitution recognizes the policy of general laws for granting licenses to sell liquors, and founds the common schools in part on this basis for support, and that the legislature may not change this policy thus recognized by the constitution, and may

not starve common schools by cutting off this source of supply of means furnished by the constitution.

We have fully considered this objection and reject it as utterly without support in reason or authority. A rule or policy cannot be deduced from the mere recognition of an existing state of things.

Such recognition and a declaration of will based upon it is not a perpetuation of that which is recognized. It cannot be held to prevent change of the conditions recognized, and, besides this, the very constitutional provision invoked for the extraordinary view urged plainly implies the subjection of licenses to sell intoxicating liquor to *the laws of the State,* those which may at any time be in force, thus embracing the idea of what should at any time be the expressed will of the department intrusted by the constitution with legislative power, *i. e.,* the legislature.

The constitution does not establish any policy or ordain any provision as to licensing or trafficking in intoxicating liquors. As a distinct subject, it is wholly unaffected by that instrument.

*Affirmed.*