NORWICH UNION FIRE INS CO. *v.* STANDARD DRUG CO.

[83 South. 676, In Banc. No. 20973.]

1. JUDGES. *Relation to attorneys does not disqualify, when.*
   Under Code, section 165 and Code 1906, section 995. (Hemingway's Code, section 715) as to a judge not presiding where he is related to either party, a "party to an action or suit" being one who is directly interested in the subject-matter in issue; where the attorney employed by defendant on a contingent basis was a first cousin of the chancellor this did not disqualify the chancellor from trying the case.

2. SAME.
   It is relationship to the parties, or either of them to the suit that disqualifies a judge, and not his relationship to an attorney in the case.

APPEAL from the chancery court of Lauderdale county.
HON. G. C. TANN, Chancellor.

This was a suit by the Standard Drug Company
against the Norwich Union Fire Insurance Company.
Defendant filed a suggestion of disqualification of the
judge which complainant contested and the chancellor
declined to recuse himself, but granted an interlocutory
appeal to settle the principles of the case.

The facts are fully stated in the opinion of the court.

*R. L. McLaurin, J. R. Byrd* and *Baskin & Wilbourn,*
for appellants.

The response to the suggestion of disqualification first
filed, record page 21, as we understand it, raises two
questions only: 1. Without denying the facts set up in
the suggestion, the response denies the legal conclusion
from those facts, i. e., denies that by reason of the
allegations of the suggestion, the chancellor is dis-
qualified.

2. The response says, conceding the disqualification,
the appellee will waive it and the appellant will suffer
no harm from it. Neither response is good, we submit,
as is manifest on a mere statement thereof. The
appellee evidently was not satisfied with the response
on page 21 of the record, and filed another answer to
the suggestion, record page 22, in which appellee pre-
sented only two alleged reasons, to-wit:

1. It reiterates its denial No. 1 in the first answer
of the legal conclusion that the chancellor was dis-
qualified.

2. It denied that Judge BYRD had any interest in the
result of the litigation, and denied the contingent nature
of his employment.

The court will see, therefore, that as we understand it,
the pleadings presented only the single issue of fact as
to the interest of Judge Byrd in the success of the

suit. The testimony, however, was undisputed on that issue, and showed beyond question that he was financially interested.

We submit, therefore, that it is manifest from the record that the Chancellor erred in refusing to recuse himself.

The constitution, section 165, reads as follows: "No judge of any court shall preside on the trial of any cause where the parties or either of them shall be connected with him by affinity or consanguinity, or where he may be interested in the same except by the consent of the judge and of the parties. Whenever any judge of the supreme court or the judge or chancellor of any district in this state, shall, for any reason be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the governor may commission another, or others of law knowledge to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified. Where either party shall desire, the supreme court for the trial of any cause, shall be composed of three judges. No judgment or decree shall be affirmed by disagreement of two judges constituting a quorum."

The Code, section 995, is as follows: "Judge not to sit when interested or related.—The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties." The case of *Y. & M. V. Railroad Company* v. *Kirk*, 102 Miss. 41, is directly in point.

The case of *Dodds* v. *Kelly*, 107 Miss. 471, is to the point that the court may not render a decree favorable to the side that raises the point, and cures the dis-

qualification.    That the objection was raised in time
and not waived is manifest from the facts and from the
following cases: In *Minocks* v. *McGhee,* 97 Miss. 321,
the court clearly indicates the point is not waived if
raised "during the pendency of the suit."

The case of *Y. & M. V. Railroad* v. *Kirk,* 58 So. 710,
cited *supra,* shows that the objection may be made at
any time before final judgment.    This case is also re-
ported in 42 L. R. A. (N. S.) 1172, and is followed and
quoted from at length in the case of *Brown* v. *Brown,*
L. R. A. 1918F, 1033.    There is a note to the case
of *Brown* v. *Brown,* in L. R. A. 1918F, page 1036,
wherein it is shown that one court's opinion in the
Kirk case was cited and approved in *State* v. *Mayo,* 43
Okla. 105, 141 Pac. 433.    It was the right of appellant
to employ Judge Byrd as and when it did.    It was
Judge Byrd's right to accept the employment.

Appellee has no vested right to have the case tried
before any particular chancellor.    It was both wise and
the duty of appellant to call attention to the disquali-
fication when he did. Otherwise, after a great deal of
expense had been incurred, it would have been the right
and privilege of appellee at any time before final decree
to raise the point.

We respectfully submit that the facts and the law
are all one way, and that it is clear and manifest from
the record that the learned chancellor erred in refusing
to recuse himself.

*Amos & Dunn,* for appellee.

Section 165 of the Constitution of 1890, provides that
"No judge of any court shall preside on the trial
of any cause where the parties or either of them shall
be connected with him by affinity or consanguinity, or
where he may be interested in the same except by the
consent of the judge and of the parties."    Section 995
of the Code of 1906 is to the same effect.

33.   121—Miss.

Counsel for the appellant cite the case of *Railroad Company* v. *Kirk,* 102 Miss. 41, as decisive of the question here presented and while we do not question the correctness of the decision in the Kirk case, on the facts presented by the record in that case, yet with the greatest deference to the learning and ability of opposing counsel we insist that the decision in the Kirk case is not decisive of the question presented by the record in this cause; and we pray the indulgence of the court while we attempt to demonstrate the soundness of our contention.

In the Kirk case, Messrs. Barbour & Henry were attorneys for the plaintiff in the court below. The suit was for the recovery of damages from the defendant for personal injuries negligently inflicted on the plaintiff. After the case was tried in the lower court the defendant filed its motion to set aside the verdict and grant a new trial, "because Hon. W. A. Henry, the presiding judge was incompetent to hear the case, for the reason that Messrs. Barbour & Henry, who were counsel for the plaintiff, are both related to said presiding judge, the former being a brother-in-law and the latter a son, and said Barbour & Henry had said case upon a contingent fee. That the assignment of said interest of said Barbour & Henry was not filed with the papers, and was not known to counsel for defendant until after said cause was tried." Upon the hearing of the motion, an agreement was introduced in evidence, and reads as follows: "It is agreed in this case that there was no assignment in writing to the attorneys, but that it was agreed with the plaintiff Kirk, that they were to be paid a certain percentage of the recovery as compensation for their services; that this fact was not known to the attorneys for the defendant until after the trial and that the circuit judge knew nothing of what the agreement between the plaintiff and his attorneys was until the matter was presented on this

motion. It is also admitted that J. F. Barbour is the brother-in-law, and W. A. Henry, Jr., is the son, of the presiding judge."

After quoting that portion of section 165 of the Constitution of 1890 above quoted, Judge Cook says: "The only difficulty in construing this constitutional limitation upon the power of judges to preside in the trial of causes lies in the interpretation and definition of the word parties. The courts of sister states have been called upon to define this word, appearing in statutes designed to cover the same conditions provided for in our constitution.

Some of the courts have adopted the narrow and technical signification of the word, and confined its application to parties to the record *eo nomine,* while others have given a broader and more liberal meaning to the statute by holding that by "parties" was meant every person who had a pecuniary interest in the lawsuit, whether their names were mentioned in the pleadings or not.

After thus stating the precise question for consideration and decision as well as the different views taken by the courts of sister states on that precise question, Judge Cook proceeds to review a number of cases of sister states on the question under consideration and after so doing announces the decision of this court on the facts as presented in the Kirk case as follows:

"We are convinced that the broad and liberal rule of construction is the soundest and wisest rule, and adopting this rule as our guide, we conclude that the circuit judge was disqualified to preside at the trial of this case. If the numerical weight of authority rested with the narrow view, we would unhesitatingly follow the lead of those courts adopting the broad and liberal construction of statutes and constitutions similar in language to our own constitution. In the absence of precedent, we would feel constrained to create a precedent in harmony with our views. Every litigant is entitled to

nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation, whether that interest is revealed by an inspection of the record or developed by evidence *aliunde* the record. The real parties in interest furnish the reason for the judge to recuse himself when it becomes known that they are related to the judge, although they may not be parties *eo nomine.*"

An examination of the facts and decisions of the courts of the sister states which were reviewed by Judge Cook in the Kirk case discloses the following, to-wit: The case of *Moses* v. *Julian,* 45 N. H. 52, 84 Am. Dec. 114, was a case where a probate judge before his appointment had acted as counsel in drawing a will, which was presented for probate before him after he had been commissioned as probate judge; and the point was made that he was disqualified to preside or to make any order to the probate of the will. In passing on this case the supreme court of New Hampshire at page 122 of 84 Am. Dec., says:

"Among this class of disabilities is that chiefly in question in this case, the fact that the judge, as is alleged, has acted as counsel for the party in the same cause, which has always been held everywhere to justify the suspicion and belief that, however upright he may be, he cannot avoid favoring the cause of his late client. It is, consequently, everywhere a just cause for the judge to withdraw, or for the party to recuse him.

"Our own reports abound with entries that ——, J., having been of counsel, did not sit; and the dockets furnish evidence abundant that the law which called for such entries was recognized and acted upon long before we had reports; one who has acted as counsel in taking depositions cannot act as a magistrate in taking others.

"And our statute, which forbids any justice of the supreme judicial court to sit upon the trial of any

cause in which he has been concerned as party, or attorney, and forbids him to act as attorney, or to be of counsel, or to give advice in any matter which in the ordinary course of proceedings may come before the court of which he is justice, for adjudication (Stat. 1855, ch. 1659, sec. 23) must be regarded as a legislative recognition of the common law, applicable to all judges and judicial officers.

"This objection is purely personal. It has no application to the case of near relatives of the judge having been counsel; *voet, ubi sup;* not to the judge having been counsel in any other case, but it will be held valid where the cause is substantially the same, though it may not be precisely identical.

"It seems to us very clear that *a fortiori*, the acting advocate and giving of counsel in a case, whence a cause in court may spring up, after the judge has received his appointment must be good cause of disqualification as a judge, independent of any statutory enactment. It is the fact that the judge has acted as attorney, counsel, law adviser, or advocate, in relation to the business in hand, that furnishes the just cause of exemption, without reference to the time when such aid or counsel was given."

The case of *Crook* v. *Newborg*, 124 Ala. 479, 27 So. 432, 82 Am. St. Rep. 190, was a proceeding by way of mandamus against Crook, a probate judge, to compel him to certify his incompetency to hear and determine the settlement of the final account of one Gammon as administrator. The objection urged to the competency of the probate judge was that one S. L. Crook, a first cousin of the judge was one of the sureties on the bond of Gammon as administrator. The court in that case said: "It has been too often adjudicated by this court to be now a matter of doubt, much less of dispute, that sureties upon an administrator's bond are bound and concluded by the decree against their principal

primarily and to the same extent as their principal is bound. So, then, the question fairly presented may be said to be this: Is a judge disqualified from determining a cause in which a decree or judgment must be rendered, in which a first cousin, though not a party to the proceeding *eo nomine,* has an interest in the result of the trial?''

In passing on this question the court said: ''Is the interest of a surety upon an administrator's bond in a decree to be rendered on a final settlement of his principal so remote and indireet as that notwithstanding the relationship of the judge he may render such decree?

''The purpose of the settlement is to state the account between the administrator and those interested in the matter of distribution of the assets of the estate whether they be heirs or creditors. An accurate statement of the account is a matter in which the administrator and the adverse parties are vitally interested. This, of necessity, involves the allowance of proper credits to the administrator for all money legally disbursed by him. And a charge against him of only such items as he is legally chargeable with. In the matter of the statement of this account it is of some moment to the sureties upon the administrator's bond that their principal should be charged only with such items as he is liable for, and that he be credited with all moneys rightly paid out by him, since the decree to be entered in the cause, by which they are bound, is predicated upon the account, as stated by the judge. Indeed, we doubt not but that they can prosecute an appeal to this court for the purpose of reviewing the decree.

''The interest of the surety in the decree to be rendered is direct, and, of consequence, his relation to the probate judge within the prohibited degree renders the judge incompetent to hear and determine the cause. When this is the case, under section 3381 of the code, it is the duty of such judge to certify the

fact of incompetency to the judge of the circuit or to the chancellor of the division; and such register, judge, or chancellor must, upon such certificate, appoint a disinterested person practicing in the country learned in the law to act as special judge.

The case of *Roberts* v. *Roberts,* 115 Ga. 259, 41 So. 616, 90 Am. St. Rep. 108, was a suit by a wife against her husband for alimony and counsel fees. One of the counsel for the wife was a brother of the presiding judge, and another of the counsel for the wife was related within the fourth degree of consanguinity to the wife of the presiding judge. The husband, as defendant suggested that the judge was disqualified because of the facts above recited and in passing on the question the supreme court of Georgia said:

"It is the pecuniary interest of the attorney in the result of the case which disqualifies the judge. If the applicant did not ask any allowance of counsel fees, of course the fact that her counsel was related to the judge, no matter how closely, would not have the effect to disqualify the judge from presiding. The moment the applicant asks for counsel fees the counsel becomes pecuniarily interested in the result of the suit, and, so far as these fees are concerned, the counsel are as much parties to the case as if they were parties to the record. In *Sprayberry* v. *Merk,* 30 Ga. 81, 76 Am. Dec. 637, it appeared that a suit for divorce was brought by Sprayberry, as counsel for Mrs. Merk, against her husband, and that a bill in equity in aid of the divorce proceedings was also filed by him. The parties settled the controversy before final judgment, and the case was dismissed. It was held that the attorney had a right to bring a suit in his own name against the husband upon a *quantum meruit* for fees due the counsel for service in the case where he had represented the wife. In *Weaver* v. *Weaver,* 33 Ga. 172, a suit for divorce was brought, and there had

been an order granting the wife temporary alimony and counsel fees. The libel for divorce was dismissed, and it was held that the effect of this dismissal was to rescind the order for alimony, but that the order for counsel fees was not rescinded, but counsel had a right to enforce the order as granted and was not driven to his action at law to recover the fees. These cases seem to show conclusively that, under the law of this state, fees which have accrued as the result of employment by the wife to bring an action for divorce, or have been allowed pending a suit for divorce or application for permanent alimony, absolutely belong to the counsel who rendered the services to the wife, and such counsel may, if necessary, enforce payment of the same by the husband through appropriate proceedings in their own name. The rule seems to be different in equity cases where counsel fees are allowed to a party who has brought a fund into court for distribution: *Morgan* v. *Fidelity Deposit Co.*, 101 Ga. 389, 28 So. 857; *Mohr-Weil Lumber Co.* v. *Russell,* 109 Ga. 579 (1), 34 S. E. 1005; *Johnson* v. *State of Arkansas,* 112 S. W. 143, 18 L. R. A. (N. S,) 619, 87 Ark. 45.

The case of *Howell* v. *Budd*, 27 Pac. 747, 91 Cal. 342, was a case where an alleged daughter of a decedent was seeking to have revoked certain letters of administration granted to decedent's grand nephew, and the sons of the presiding judge, as attorneys had contracted to try the case for the grand nephew on condition that they should receive one-third of the estate if they should succeed in defeating the suit of the alleged daughter; and it was held that the judge was disqualified under a statute providing that "no judge shall sit or act in any case . . . when he is related to either party by affinity or consanguinity," because the attorneys were in effect equitable owners of a portion of the estate under their contract with the grand nephew.

The case of *Patton* v. *Collins,* 90 Texas, 115, 37 So. 413, was a suit on a promissory note which contained a provision for the payment of "ten per cent attorney's fees if collected by law or if placed with attorneys for collection." J. J. Ofiel one of the attorneys for the plaintiff was a brother-in-law to the presiding judge. The declaration alleged. "That plaintiffs have been compelled to employ Boyd & Ofiel, attorneys at law, to bring suit for collection and have agreed to pay them the amount of money mentioned in said notes, as attorneys, for their services." It was held that the judge was not disqualified because it did not appear that any interest in the notes sued on or any part thereof had been assigned to the attorneys for plaintiff. To the same effect see *Winston* v. *Marterson,* 87 Texas 200, 27 S. W. 768.

However, in the case of *M. K. & T. R. R. Co.* v. *Mitcham,* 57 Texas Civ. App. 134, 121 S. W. 871, it was held that the relationship of the presiding judge to the plaintiff's attorney operated to disqualify the judge where it appeared that a percentage of the amount which might be realized by or out of the suit was conveyed to such attorney.

In the case of *Dunbar* v. *Wallace,* 84 Ark. 231, 105 S. W. 257, it was held that mandamus would not lie to compel a judge to permit the filing of a suggestion of his disqualification merely because the fee of one of the attorneys in the cause, who was related to the judge, was contingent. But the court intimated that its holding might have been different if it had been alleged that such attorney had a direct pecuniary interest in the subject-matter of the litigation.

In the case of *Brown* v. *Brown,* 103 Kan. 53, 172 Pac. 1005, L. R. A. 1918F, 1003, it was held that where the judge of the district court was the father of the attorney for the wife, in a divorce suit, whose fee is

to be fixed by the court, that the judge was disqualified, because the son was a "party" in interest within the meaning of section 57 of the Kansas. Code.

In the case of *White* v. *McClanahan,* 133 La. 47, L. R. A. (N. S.) 448, 63 So. 61, where a son of the judge was employed by the plaintiff to bring suit against the defendant for damages, under a contract by which he should be paid a fee wholly contingent upon the amount recovered by the suit, it was held under the Louisiana Statute the son was a "party" because he had a "direct" interest similar to that of his client, in the judgment to be rendered, and under section 124 of Act 1906, may record his contract and thereby make himself a party to the record and acquire rights equal to those of his client with respect to the disposition of the cause." Hence that the judge was dis-·qualified.

In the case of *State ex rel. Mayo* v. *Pitchford,* 4:: *Okla.* 105, 141 Pac. 433, it was held that a statute disqualifying a judge when he is related to any party applies where one of the plaintiff's attorneys was the son of the judge and was prosecuting the suit, under a contract for a contingent fee, because under the statute providing for contingent fees, an attorney so acting has, at least, an equitable interest in his client's cause of action.

In the case of *Cavanaugh* v. *District Court,* 163 Iowa, 76, 144 N. W. 25, it was said that a statute disqualifying a judge in any case where he is related to either party, prevents a probate judge from making an order directing the payment of a certain fee to counsel whose associate was the son of the judge, such counsel having agreed to divide fees with such associate. In such case the son of the judge had a direct interest in the. judgment and the proceeds thereof.

In the case of *Shuford* v. *Shuford,* 141 Ga. 407, 81 S. E. 115, the court following the decision in *Roberts*

v. *Roberts,* 115 Ga. 259, *supra,* held that the judge, who
was related to one of the counsel employed upon a
contingent fee in a claim case, was disqualified to pre-
side in the trial of the cause. We have no access to
this case and have not read it, our only knowledge of
it being obtained from a digest syllabus which is not
very satisfactory; but from the previous decision in
the *Roberts case, supra,* and the decision in the subse-
quent case of *Young* v. *Marris, infra,* we feel sure that
a careful reading of the facts will disclose that the
attorney who was related to the judge, and who was
employed on a contingent fee represented the plaintiff
or a claimant of the property in dispute and that such
attorney was to be paid a certain percentage of the
amount which his client recovered in the suit. *Young*
v. *Harris,* 146 Ga. 333, 91 S. E. 37.

In the case of *Vine* v. *Jones,* 13 S. E. 54, 82 N. W. 82,
it was held that under the statute requiring a county
judge when he is a party to, or personally interested
in any proceeding in any probate matter therein, or
related to any person so interested, to certify to the cir-
cuit court such fact that he must make such certificate
when he is related within the degree provided by stat-
ute, to an attorney who is prosecuting a cause on a
contingent fee.

We have not cited in this brief any case except
those holding the broad, or liberal view announced by
Judge Cook in the Kirk case. We have diligently ex-
amined every decided case bearing upon the proposition
under consideration so far as we have been able to find,
and we have not found any case where the judge was
held incompetent, or disqualified, because he was re-
lated to an attorney representing a mere defendant.
In every case that we have found where he has been
held to be disqualified because he was related to an
attorney in the suit, such an attorney represented the
plaintiff, complainant, cross-complainant, or claimant,

and every such attorney had a contract with his client by which he was to receive a certain percentage of the amount recovered by his client in the suit or else his fee was to be fixed by his kinsman, the judge.

In all such cases where the judge has been held to be disqualified, the courts have based their decision upon the proposition that such an attorney, by reason of the fact that he was employed on a contingent fee basis, was a real party in interest to the suit, and that he was a real party in interest because by the terms of his contract with his client he had an interest or share in the proceeds of whatever judgment might be rendered in favor of his client. Several times in the various courts, in their efforts to limit and define, exactly the extent of the interest of an attorney in his client's cause that would make him a real party to the suit have said that the attorney must have "a direct pecuniary interest in the result of the suit." We submit after a careful examination of all of the cases holding the liberal view announced in the Kirk case, that a more accurate definition of what the courts have really held is, that in order for any attorney to be a real party to the suit of his client, he must have a direct pecuniary interest, or share in the proceeds of any judgment that may be rendered in said suit in favor of his client. No matter how the courts have expressed the rule, that is, the substance and effect of their holding in every case, when the actual facts are examined in the light of the actual decision of the court.

Etheridge, J., delivered the opinion of the court.

The Standard Drug Company filed a suit in the chancery court of Lauderdale county against certain insurance companies, among which was the appellant company, for violating the antitrust laws of the state

and for injuries resulting to the complainant by reason of such violations of the statute. The appellant demurred to the bill filed against it, the demurrer was overruled, the cause was appealed to this court, and was affirmed and remanded, as shown in *Norwich Union Fire Insurance Co.* v. *Standard Drug Co.,* 117 Miss. 429, 78 So. 353. After the case was remanded appellant was granted leave to amend or plead further. Subsequent to the decision of this court above referred to, a relative of the chancery judge was employed as counsel by the insurance company upon a contingent fee basis, that is, the said attorney was to be paid fifty dollars in cash and four hundred and fifty dollars additional, provided the defendant won all the suits filed by the appellee. Thereafter the defendant in the chancery court filed a suggestion of disqualification of the chancery judge because of his relationship or kinship to the attorney employed upon the contingent fee basis, as above stated. The complainant contested the suggestion for disqualification, and the chancellor declined to recuse himself, but granted an interlocutory appeal to settle the principles of the case. The attorney so employed on the contingent fee basis was a first cousin of the chancellor and the sole point presented for decision is whether the chancellor was disqualified by reason of his kinship to the said attorney so employed on the contingent fee basis.

The statutes involved are section 995, Code of 1906 (section 715, Hemingway's Code), which reads as follows:

"Judge Not to Sit When Interested or Related.— The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the

judge and of the parties'' and section 165 of the state Constitution, which reads as follows:

"No judge of any court shall preside on the trial of any cause where the parties or either of them shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties. Whenever any judge of the supreme court or the judge or chancellor of any district in this state, shall, for any rea-son, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the Governor may commission another, or others, of law knowledge to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified. Where either party shall desire, the supreme court, for the trial of any cause, shall be composed of three judges. No judgment or decree shall be affirmed by disagreement of two judges constituting a quorum."

This court in the case of *Y. & M. V. Railroad Co.* v. *Kirk,* 102 Miss. 41, 58 So. 710, 834, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C, 970, in construing this provision disqualifying judges, held that the trial judge was disqualified to sit in a case where the fee of plaintiff's attorneys, who were brother-in-law and son, respectively, of the trial judge, was to be a percentage of the amount recovered in the action. The agreement in that case reads as follows:

"It is agreed in this case that there was no assignment in writing to the attorneys, but that it was agreed with the plaintiff, Kirk, that they were to be paid a certain percentage of the recovery as compensation for their services, that this fact was not known to the attorneys for the defendant until after the trial, and that the circuit judge knew nothing of what the agree-

ment·between the plaintiff and his atorneys was until the matter was presented on this motion.''

It was also admitted that the attorneys were so related to the circuit judge. This court in that case, in construing the statute above set out, adopted that line of authorities which hold that, if the attorney who is interested in the subject-matter of the litigation, though not a formal party to the record, is related to the judge, his relationship to the trial judge disqualifies the trial judge in such case, the court citing with approval in that opinion. *Crook* v. *Newborg,* 124 Ala. 479, 27 So. 432, 82 Am. St. Rep. 190; *Hodde* v. *Susan,* 58 Tex. 394; *Moses* v. *Julian,* 45 N .H. 52, 84 Am. Dec. 114; *Roberts* v. *Roberts,* 115 Ga. 259, 41 S. E. 616, 90 Am. St. Rep. 108; *Johnson* v. *State,* 87 Ark. 45, 112 S. W. 143, 18 L. R. A. (N. S,) 619, 15 Ann, Cas, 531,

We are asked in the present case to extend the rule so as to make the word ''parties'' in the above statute include an attorney for the defendant, related as above stated, whose fee is a contingent one, even .though he has no contingent interest in the subject=matter of the suit nor in the judgment to be entered. An extensive examination of the authorities fails to disclose any case where an attorney for the defendant on a mere contingent fee disqualifies a judge related to such attorney under a statute similar to the· provision of our statute set out. It is relationship to the parties, or either of· them, to the suit that disqualifies a judge, and not his relationship to an attorney in the cause. We have gone farther than the majority of the courts in making an attorney related to the judge and having an interest in a suit a disqualification to a judge as being a party within the meaning of the law. We adhere to the rule announced in the Kirk Case, but decline to extend it further. We believe that the further extension of the meaning. of this term, even if

we had the power to enlarge upon the statute, would result in greater mischief than good. It is, of course, important that the trial judge be fair and impartial and removed from any improper influences in passing upon the rights of litigants, but to hold with the contention of the appellants would disorganize the judicial system of this state and result in practically unlimited special judges. The word "party" referring to judicial practice, is defined in Words and Phrases, First Series, vol. 6, as follows:

"A party to an action or suit is one who is directly interested in the subject-matter in issue; who has a right to make a defense, control the proceedings, or appeal from the judgment [citing authorities]. . . .

"Though, technically speaking, persons to whose use a suit is pending are not plaintiffs, yet in common parlance they might with propriety be both said to be parties where such use appears in the suit. . . .

"A party is ordinarily one who has or claims an interest in the subject of an action or proceeding instituted to afford some relief to the one who sets the law in motion against another person or persons. Interest or the claim of interest is the test as to the right to be a party to legal proceedings almost without exception."

In the case of *Young* v. *Harris,* 146 Ga. 333, 91 S. E. 37, the Georgia court, one of the states which we followed in the Kirk Case, had a case analogous to the present before it for consideration, and it was held that an attorney, whose contract with his client provides that he is to be paid a certain sum in all events and a larger sum if the attorney's client is successful, has no such interest in the subject-matter of the litigation as to disqualify the judge, who is a brother of the attorney, from presiding in the case. The court said at page 334 of 146 Ga., 91 S. E. 38:

"A judge is not disqualified to preside in a case because his brother is the attorney for one of the parties and the size of his fee is dependent on his success in the case. There is no statute or canon of law which disqualifies a judge on the ground of relationship to the attorney of one of the parties to a cause. Such disqualification must result only when he has a pecuniary interest in the subject-matter of the litigation."

And on page 335 of 146 Ga., 91 S. E. 38 of the same case it is said:

"In the instant case the attorney has no interest in the *res;* he can recover nothing from the adversary party by virtue of his contract with his client, which is altogether outside of the subject-matter of the litigation. Such a contract gives the attorney no more interest in the litigation than if his contract were that his fee should be one sum should the trial occur at the first term and a different sum should the trial take place at a later term. Were the rule otherwise, it would be impossible for a judge to ever preside in a case where one of the attorneys is a kinsman within the fourth degree of consanguinity or affinity."

If the court should hold that a mere contingent fee, not rooted in the *res,* paid or agreed to be paid to a relative of the judge, would disqualify the judge, it would be within the power of the litigant to bring about the disqualification of the judge, even in this court, and even in criminal cases, and a litigant would never have to go to trial so long as he had means to employ attorneys related to the judge on a contingent fee. If this rule were established a man indicted for murder, or other felony, who did not want to stand trial, could wait until the case was called for trial, then employ on a contingent basis some attorney related to the trial judge by blood of marriage, suggest the disqualification of the trial judge, brought about by himself, and refuse to agree to a judge to try the case, and delay

34. 121—Miss.

the case until a special judge was appointed by the Governor and qualified, and then might employ an attorney related to the special judge on similar conditions, and thus disorganize the judicial administration of justice to such degree and to such extent as to produce infinitely more mischief than mere relationship to the trial judge could possibly produce.

We have examined all of the authorities referred to by counsel, and we find no case which warrants us in extending the disqualifications of the judges related to the attorney for the parties on a mere contingent fee. So far as ascertainable from the reports all cases holding judges disqualified for relationship to attorneys employed on a contingent fee are cases where the attorney's fee was a part of the judgment recovered, or where his fee had to be fixed by the official action of the judge rather than by the parties employing such attorney. The chancellor having reached the same conclusion that we have reached, the judgment will be affirmed, and the cause remanded to be proceeded with.

*Affirmed and remanded.*