CASHIN *et ux. v.* MURPHY.[*]

(Division A.   April 13, 1925.)

[103 So. 787.   No. 24642.]

1. JUDGES. *Proper for judge, attacked by recusation motion, to hear and determine it, instead of surrendering the bench to another to pass thereon.*

   Where a judge is attacked by recusation motion, he need not surrender the bench to another to pass thereon, but properly passes on his own disqualification to sit in the case.

2. JUDGES. *Ex parte affidavits inadmissible as evidence on recusation motion.*

*Ex parte* affidavit is inadmissible on trial of a recusation motion, the same rules and laws of evidence applying to such motion as to any other cause in court.

3. JUDGES. *Judge not disqualified to sit in case, unless connected with party by affinity or consanguinity, or pecuniarily interested.* Under Const. 1890, Section 165, and Code 1906, Sections 995, 996, 998 (Hemingway's Code, Sections 715, 716, 718), changing the common law only by the statement in the Constitution, a judge is disqualified to sit in a case only if connected with a party by affinity or consanguinity, or pecuniarily interested; bias or prejudice based on any other ground not being supposed to exist.

---

*Headnotes 1. Judges, 33 C. J., Section 191; 2. Judges, 33 C. J., Section 190 (1926 Anno); 3. Judges, 33 C. J., Sections 129, 151.

APPEAL from chancery court of Humphreys county. HON. E. N. THOMAS, Chancellor.

Suit between J. M. Cashin and wife and C. M. Murphy. Recusation motions of the former parties were overruled, and they appeal. Affirmed and remanded.

*J. M. Cashin, pro se.*

The attention of the court is respectfully directed to section 24 of the Constitution of Mississippi. The record shows a flagrant disregard of this section. It is submitted that the record will show such a course of conduct on the part of the chancellor in this case as to indicate that to compel appellant to submit the trial of this case before him would not only be a plain violation of appellant's constitutional rights, a mockery and a farce, but would tend to bring scandal and reproach upon the judicial department of the state. See the following authorities: *Thomas* v. *State,* 5 Howard (Miss.) 32; *Y. & M. V. R. R. Co.* v. *Kirk,* 102 Miss. 41, 58 So. 710; *Ex parte Ellis,* 3 Okla. Cr. 220, 105 Pac. 184, 25 L. R. A. (N. S.) 653; *Rea* v. *State,* 3 Okla. Cr. ——, 105 Pac. 184, 139 Am. St. Rep. 954; *State* v. *Board of Education,* 19 Wash. 8, 67 Am. St. Rep. 706; *Moses* v. *Julian,* 45 N. H. 52, 84 Am. Dec. 114; *Johnson* v. *State* (Texas), 20 S. W.

987; *Slaven* v. *Wheeler*, 58 Texas 23; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Morehouse* v. *Morehouse* (Cal.), 68 Pac. 976; *State* v. *Nunez*, 85 So. 52; *State, ex rel. Martin* v. *Judge 29th Dist.*, 94 So. 389; 16 Stand Pro, p. 669; 15 R. C. L. 526; *Day* v. *Day*, 12 Idaho, 556, 86 Pac. 531.

It is respectfully submitted that the order of the chancellor in overruling the motion is not entitled to any weight, because the chancellor in undertaking to pass upon his qualifications, over the objection of appellant, acted as a judge in his own case, which, as said by Lord Coke, is contrary to the principles of natural justice.

It is well known that: "As a rule, prejudice is honest, and bias may be innocent. In the very nature of the case, therefore, it is extremely difficult, if not impossible, for the mind so affected to realize, much less to judicially try its own impartiality." See *People* v. *Upton*, 56 Pac. 44; *Morehouse* v. *Morehouse*, 68 Pac. 977; *Davis Est.*, 27 Pac. 342; *Finlen* v. *Heinz*, 75 Pac. 123, 3 Am. & Eng. Enc. of Law, 93.

Appellant insists that his right to have his case heard and tried by a fair and impartial judge does not depend upon any statutory, or even constitutional, provisions. His right arises from a higher source than either—it arises from those principles of right and justice which have been implanted in the laws of the Anglo-Saxon race since the days when the Barons wrested from King John at Runnymede the Magna Charta.

*J. L. Williams*, for appellee.

We submit that the gravamen of the motion is the allegation of personal dislike and prejudice on the part of the chancellor against him, and that it is not only not supported by any testimony introduced on the hearing, but the record affirmatively shows that such does not exist. If the chancellor decided cases against appellant, whether he was interested as attorney or litigant, he had the right to have the same corrected on appeal to this court, a right which has always been freely

exercised by appellant. But it is well settled that an incorrect ruling on the part of a judge does not show bias. *State* v. *Morgan* (La.), 77 So. 588.

The same case is authority for the proposition that the motion must set up facts rather than legal conclusions. See also, 15 R. C. L., 530. The cases cited in appellant's brief are mostly under constitutional or statutory provisions peculiar to the states where they arose, and have no application to the facts of the case at bar.

We do not care to reply to the vicious personal attack made on the chancellor in the brief, except to say that it is entirely unwarranted by the facts, and that the learned attorney has allowed his personal feelings in the case to carry him far adrift in this matter. This case is of course to be tried on the record, and not on the suspicions, beliefs, and emotions of appellant.

The chancellor has no right, unless the facts set up in the petition are true, to recuse himself, merely because it would be more pleasant to himself not to try the case. 84 Am. Dec. 117. It is as much his duty to try the case if he is not qualified as it is to refrain from acting if he is disqualified. 15 R. C. L. 539.

*J. M. Cashin, pro se,* in reply.

It is submitted that the chancellor erred in not sustaining the motion of the appellant to call in the chancellor of another district to hear and determine the recusation motion.

He is a party to that motion, and really the only party to it. While some authority to the contrary may be found, it is submitted that this case comes within the maxim that no one can be a judge in his own case. It is distinctly held by the supreme court of Louisiana in the cases cited in appellant's original brief herein that a judge is incompetent to determine his competency to try a case when that is challenged on the ground of bias and prejudice, and that he must either recuse himself or refer the matter to another judge for trial. And it was

so held by the court in the absence of any statute regulating the matter. See too *Stockwell* v. *Township Board,* 22 Mich. 341; *The Peninsula Railway Co.* v. *Howard,* 20 Mich. 18.

The usual method of proving bias and prejudice on the part of a judge is by affidavits as to the acts and conduct of the judge. *Day* v. *Day,* 86 Pac. 531.

It is respectfully insisted that to compel this case to be tried by Chancellor THOMAS, a biased and prejudiced judge, would be a denial of right and justice, and a violation of section 24 of the Constitution. It is also insisted that said provision of the Constitution is a mandatory provision, and that the legislature neither by neglect to act, nor by legislation, can nullify a mandatory provision of the Constitution. It seems to be well settled in this country that such provisions of the Constitution as section 24 are self-executing, and require no legislative provision for their enforcement, and cannot be abridged or modified by any legislative or judicial act: See *Law* v. *People,* 87 Ill. 385; *Davis* v. *Burke,* 179 U. S. 399, 21 Sup. Ct. Rep. 210; 45 L. Ed. 249; Cooley on the Constitution, 98; *Willis* v. *Maben,* 48 Minn. 287, 65 N. W. 1110, 16 L. R. A. 281; *State* v. *Kyle,* 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115.

McGOWEN, J., delivered the opinion of the court.

For some years litigation has been pending between these parties, and the style of this case is not unfamiliar to this court. The case is here now upon the recusation motion of J. M. Cashin and his wife, who, at the January, 1924, term of the court, filed their separate motions alleging that Chancellor E. N. Thomas, the presiding chancellor of that county and district, was disqualified because of bias and prejudice. Without quoting all of the movants' grievances against the chancellor, there is brought forward into this motion a similar motion which was made in 1922, which was overruled by the chancellor, and appeal therefrom prosecuted to

this court. In the meantime the movant, J. M. Cashin, had presented a petition to the circuit judge, asking that his *status* as a lawyer be restored; he having been previously disbarred. The circuit judge, learning that the chancellor had imposed a sentence for contempt, required that he apologize to the circuit judge and to the chancellor, and Cashin went to Vicksburg with his father-in-law and apologized to Chancellor Thomas, they shook hands, the chancellor wrote a letter or otherwise informed the presiding circuit judge that Cashin had obeyed the request of the court, and, in the language of the chancellor, in the hotel at Vicksburg, after they shook hands, the chancellor told him he hoped he would do well and that he was disposed "to let bygones be bygones."

An affidavit of S. T. Ronan was filed, in which he made an *ex parte* affidavit in the city of Chicago to the effect that Chancellor Thomas had spoken in a sneering manner of J. M. Cashin's ability to pay money, the affiant, Ronan, stated to the chancellor that he thought he was in error; that Mr. Cashin, to his knowledge, had arranged with his father-in-law to be able to carry out the proposition which he had made with the chancellor with reference to the pending litigation, and that Chancellor Thomas remarked:

"Well, if Cashin's father-in-law had come in and said the matter would have been settled, it would have gone that way, or would have been settled in a moment."

The movant further alleged that in his absence the chancellor had made offensive and insulting remarks in the courtroom concerning the movant. He then alleged that the chancellor declined to hear his case, and on one occasion, when his solicitors appeared at Greenville and requested a hearing at the term of the court of that county, the chancellor explained to the lawyers that he was getting the members of the bar to hear his cases at Greenville, because of the serious, dangerous, and critical illness of his little grandson, and that the chancellor in that conversation at Greenville said that he was sick

and tired of the whole Cashin litigation. Mrs. Cashin filed a similar motion, setting out certain rulings, and criticizing each adverse ruling made by the chancellor in the cases in which these parties were litigants before his court.

It would be futile and not profitable to undertake to copy into this opinion the long affidavits filed in this cause.

The other party to the litigation, C. M. Murphy, filed an answer to the recusation motion of Mr. and Mrs. Cashin, and specifically denied that the chancellor was biased, and denied specifically the instances complained of, and denied that the rulings of the chancellor were to be considered as manifesting bias, prejudice, or malice, and said that the chancellor's rulings had been more in favor of Cashin than against him, cited two cases and opinions in this court in which favorable rulings by the chancellor in favor of Cashin were by this court reversed, and the chancellor's decrees modified as being too favorable, and insisted upon their right, as they saw it, to have the regular qualified chancellor of the district proceed to hear and dispose of the litigation as chancellor.

The chancellor, E. N. Thomas, overruled the motion and granted an appeal to settle the principles of the case.

The proof was taken in rather a desultory way, and the affidavit of Ronan, the Chicago witness, was offered, objected to by counsel for Murphy, and the court sustained the objection, and this action of the court is assigned for error, together with the general objection that the chancellor should have surrendered the bench, upon the filing of recusation motions, to some other judge to pass on those motions.

These two matters can be disposed of with the statement that it is the universal holding of the courts that the chancellor should not have surrendered the bench upon being attacked, and is competent to pass upon and ascertain whether or not he is disqualified to sit as judge in the pending cause. While that question has not been

before this court directly, the case of *Norwich Union Fire Insurance Co.* v. *Standard Drug Co.,* 121 Miss. 510, 83 So. 676, 11 A. L. R. 1321, was before this court, and in the opinion in that case Justice ETHRIDGE uses this language:

"Thereafter the defendant in the chancery court filed a suggestion of disqualification, . . . and the chancellor declined to recuse himself, but granted an interlocutory appeal to settle the principles of the case. The attorney so employed on the contingent fee basis was a first cousin of the chancellor, and the sole point presented for decision is whether the chancellor was disqualified by reason of his kinship to the said attorney so employed on the contingent fee basis."

After reviewing at length the question of disqualification because of relationship to the attorneys rather than to parties, Judge ETHRIDGE winds up his carefully prepared opinion in the case by saying this:

"The chancellor having reached the same conclusion that we have reached, the judgment will be affirmed, and the cause remanded to be proceeded with."

This statement seems to make it apparent that the court had at that time before it the proposition that the chancellor had passed upon his own qualification as a judge on a motion of recusation, and this is persuasive, being the latest announcement of this court on that subject, that the proper procedure is for the judge attacked to hear and dispose of the motion. Certainly it would be a novel procedure for a judge to carry with him throughout his district a deputy to determine whether or not he was disqualified under the laws of the land, and we decline to consider this assignment of error seriously. There is no authority cited on that proposition.

As to the. *ex parte* affidavit of Ronan, which the chancellor excluded, there can be no doubt but that the chancellor was correct in holding that an *ex parte* affidavit was not to be received in testimony and allowed to have probative value in an investigation of this kind. We

know of no law changing the rules for the submission of evidence on a trial of a motion of this kind, and the same rules and laws of evidence apply to this motion as would apply to any other cause in the courts of the state.

Chancellor Thomas himself took the stand, said he did not remember whether or not he had made use of the language, "I am sick and tired of the whole Cashin litigation," denied that he had any prejudice or feeling, stated that at the time he was accused of making this remark his little grandson was lingering between life and death, and that he was physically and mentally unable to hold court on account of his grief and anxiety at the condition of the sick child; that during the entire month of November his entire time was required in the regular business of the court, which he conceived to be ahead of vacation matters.

Cashin did not offer any testimony in support of many of his charges. In fact, we may say with perfect safety that the charges made in the affidavit, pointed and bitter as they appear to be, are not sustained by this record, and bias and prejudice are not known, if bias and prejudice were grounds of disqualification of a judge in Mississippi. In view of the situation, and the fact that this motion has been made twice in litigation in which the movant was interested, we have decided to make clear, if we may, our construction of the present *status* of the law on that subject.

It is our deliberate judgment that every litigant is entitled to a fair and impartial trial before a cool, calm, deliberate, fair judge, who has no interest in the case, and who is not related to the parties, and a judge who would undertake to besmirch the fair ermine of the judiciary of Mississippi would be entitled to just censure of all fair men everywhere, and all judges should remember to keep themselves as spotless as the driven snow, aloof as far as human kind may do so, from the partisanship and strife of the world about him. He should seek to envelop himself into an absolutely neutral state, to ren-

der as correct and incisive judgment as his ability and understanding may direct him, without fear, favor, or affection. An unjust and partisan judge here and there would destroy the fair name of that part of our republican form of government which has weathered the storms of the years almost unscathed, and, we dare say, holding the high esteem of the citizenry of this country. Such a standard should not be lowered, and we write these words of admonishment, not because of fear for the future, but that we may keep in remembrance the high ideals, the lofty aims, and the important purposes which have been assigned to the judiciary of this country, and that not a single one of us may forget the pressing necessity for impartial and uninfluenced decisions.

In the case before us an examination of our Constitution and statutes shows with the utmost clarity, as we view the Constitution and statutes, that bias and prejudice on the part of an autocratic judge, who forgets his duty and his oath, are not to be hailed into court and hoisted on the petard of a selfish litigant; but there is a tribunal to which such a judge is responsible for improper conduct, and fortunately no judge is left to try himself for unbecoming conduct in Mississippi. The Constitution and laws provide a means of trial, so that a judge may not preside in his own case. Section 165 of the Mississippi Constitution is as follows:

"No judge of any court shall preside on the trial of any cause where the parties or either of them shall be connected with him by affinity or consanguity, or where he may be interested in the same, except by 'the consent of the judge and of the parties. Whenever any judge of the supreme court or the judge or chancellor of any district in this state, shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the Governor may commission another, or others, of law knowledge to preside at such term or during such dis-

ability or disqualification in the place of the judge or judges so disqualified. Where either party shall desire, the supreme court, for the trial of any cause, shall be composed of three judges. No judgment or decree shall be affirmed by disagreement of two judges constituting a quorum.''

Sections 995, 996, 998, Code of 1906 (Hemingway's Code, sections 715, 716, and 718), contain and comprise all the law of Mississippi on the subject of the disqualification of a judge and aside from the statement contained in the Constitution we are under the common law. It is the writer's view that perhaps the section of the Constitution, section 165, might be termed a progressive statement of the common law, though as a general proposition at the common law there was no such thing as a disqualification of the judge. In 33 Corpus Juris, p. 988, section 128, it is said:

''While there is some conflict of authority whether at common law there exists any ground for the disqualification of a judge, by force of constitutional or statutory provision, judges may be disqualified by interest, bias, or prejudice, having acted as counsel, relationship,'' etc.

Note 78 (a) announces there existed no ground for the disqualification of a judge. A reference to 3 Wendell's Blackstone's Commentaries, p. 360, is as follows:

''By the laws of England, also, in the times of Bracton and Fleta, a judge may be refused for good cause; but now the law is otherwise, and it is held that judges and justices cannot be challenged. For the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea. And should the fact at any time prove flagrantly such, as the delicacy of the law will not presume beforehand, there is no doubt but that such misbehavior would draw down a heavy censure from those to whom the judge is accountable for his conduct.''

The same quotation is found in Cooley's Blackstone's Commentaries, p. 363, and the same quotation is cited in the notes to 33 Corpus Juris, *supra.*

As we are under the common law, the only ground for disqualification of a judge must be found in section 165 of the Constitution.

"As a general rule, where the grounds which will operate as a disqualification of a judge are expressly set out in a Constitution, or statute, such provisions are held to be exclusive; but it has also been held that statutory disqualifications are not exclusive of those imposed by the common law. It is generally held that the rule of disqualification should not have a narrow or technical construction, but should rather be broadly applied in all cases where one is called to act judicially or to decide between conflicting rights. Statutes disqualifying judges for designated causes will be liberally construed," etc. 33 Corpus Juris, p. 989, part of section 129.

"*Bias and Prejudice.*—At the common law, as now administered in England and in the United States, bias or favor, not the result of interest or relationship, is not supposed to exist." 15 Ruling Case Law, p. 530, part of section 18.

This section (15 R. C. L., p. 530, section 18) states that the common law has been modified by statute and the ruling of the court, and in many states there are statutes which disqualify a judge on account of bias or prejudice, and even upon the challenge of the accusing party without proof. But in the absence of constitutional or statutory provision the common law is our guide on this subject, and we have been undertaking to ascertain just what the well-established rule on this subject was at the common law. For a moment we will examine our own decisions, and see whether or not our court has enlarged upon the constitutional provision quoted *supra.*

In *Lemon* v. *Peyton,* 64 Miss. 161, 8 So. 235, syllabus No. 1 is as follows: "A member of a board of supervisors

who canvasses for or signs a petition for an election under the 'local option' law is not thereby disqualified from acting on such petition in his official capacity in pursuance of the terms of the law. *The interest which disqualifies a judge is pecuniary, not political."* (Italics ours.)

In the case of *Lemon* v. *Peyton, supra,* where the members of the board of supervisors signed a petition for an election, and were challenged and their appointees were challenged for that reason, Judge CAMPBELL, speaking for the court, said, upon the objection to the qualification of the board of supervisors to sit in judgment on their own petition, which they had signed, it being alleged that the order of the board was void:

"The first ground is untenable, for that would confound all distinction between the functions of one as a citizen and a judge. One does not cease to be a citizen by becoming a judge, and he may vote as his judgment dictates or petition for an opportunity to vote, and does not thereby disqualify himself as a judge in the matter which may come before him. *The interest which disqualifies a judge is pecuniary and not political."* (Italics ours.)

In *Ferguson* v. *Brown,* 75 Miss. 214, 21 So. 603, the mayor and alderman had signed a petition with other citizens for the grant of a license for the retail of intoxicating liquors. The court held that they were not so interested in the case as to disqualify them from hearing and deciding upon said duty, and section 165 of the Constitution does not disqualify because of a general interest in a public proceeding which a judge feels in common with the mass of citizens. Judge WHITFIELD at great length reviewed the authorities in the case, *supra,* and approved the case of *Lemon* v. *Peyton,* 64 Miss. 161, 8 So. 235, *supra,* using this language:

"And while the precise point for decision here was not the precise point for decision in *Lemon* v. *Peyton,* 64 Miss. 164, the test as to disqualifying interest is held to be as in the cases we have approved. A member of

a board of aldermen of a municipal corporation sustains no such relation to that municipal corporation as any officer of a private corporation for pecuniary gain does to such private corporation. A municipal corporation is an auxiliary of government, administering within its sphere governmental functions for the good of the local community. So far, then, as their mere legal right to act on the petition was concerned, we think that they had that legal right."

2 Bouv. Law Dict. (3d Rev.) at page 1713, states as follows: "The interest which disqualifies a judge of the supreme court, so that the judge of a circuit court may sit in his stead, must be immediate, certain, and dependent on the result of the case, and not remote, uncertain, or speculative. *Trustees Internal Imp. Fund* v. *Bailey,* 10 Fla. 213."

The weight of authority seems to be that "interest" on the part of a judge means that the result of the decision will affect the judge either beneficially or injuriously, and there must be direct results as so affecting him. One of the leading cases in the United States often cited is the case of *Fulton* v. *Longshore,* 156 Ala. 611, 46 So. 989, 19 L. R. A. (N. S.) 602, which fully sustains the view in this case applied to our Constitution and laws. TYSON, C. J., there speaking for the court, said: "At the common law, as now administered in England and in the United States, bias or favor, not the result of interest or relationship, is not supposed to exist."

And he quotes Mr. Blackstone as quoted supra. Continuing, Judge TYSON said: "In *Turner* v. *Com.,* 2 Metc. (Ky.) 626, the court said: 'At common law there were but two objections that went to the disqualifications of a judge to try a cause; to-wit, interest in his own behalf in the result, or being kin to others interested therein.' In *Peyton's Appeal,* 12 Kan. 407, the court said: 'It will be admitted that at common law prejudice did not disqualify a judge.' In *Conn* v. *Chadwick,* 17 Fla. 439, this language was used: 'In the time of Bracton and

Fleta, a judge might be refused for good cause; but at the common law, as administered in England and the United States for centuries, judges and justices could not be challenged. There were disqualifying causes, such as interest and being of kin to the party.''

In the case of *Norwich Union Fire Insurance Co.* v. *Standard Drug Co.,* 121 Miss. 510, 83 So. 676, 11 A. L. R. 1321, quoted *supra,* Judge ETHRIDGE held that the chancellor was not disqualified because his relative was employed upon a contingent fee basis, and announced that the rule would not be extended, and showed how a litigant might prevent a trial being had by resorting to the employment of those attorneys who were related to the judge and a refusal to agree to a judge. That case turned upon the definition of the word ''party,'' so that in that case there was a strict adherence to the constitutional provision as to disqualification.

In *Railroad* v. *Kirk,* 102 Miss. 41, 58 So. 710, 834, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C, 968, it was held that a judge was disqualified to sit in a case where the plaintiff's attorneys are his son and brother-in-law, and interested in the outcome of the case, having taken the case on a contingent fee. Judge COOK, speaking for the court, defined the word ''parties'' in section 165 of the Constitution as applying to those who had a pecuniary interest in the lawsuit, and our court held that the judge was disqualified, because the attorneys for the plaintiff in that case had an interest in the *res.* This case is only quoted to show that section 165 of our Constitution has been the pole star guiding our court, and has not been deviated from or added to in the opinion of this writer, and we refer to that opinion and the statements therein contained as to the integrity, independence, and impartiality of the judiciary for the purpose of reiterating and indorsing the standards therein contended for.

In the instant case, it not being shown that the chancellor was interested or related to the parties by affinity or consanguinity, we are compelled to hold that the rec-

usation motion was properly overruled, and the case will be remanded, that the chancellor may proceed with the trial of the case.

*Affirmed and remanded.*