## FERGUSON & HEAD *v.* A. J. BROWN.

1. DRAMSHOPS. *Appeal from order of municipal authorities granting license. Exception. Code of* 1892, § 1581.

   The taking of exception, and filing a bill thereof, to the order of municipal authorities granting license to retail intoxicating liquors, is unnecessary to an appeal from such order. The trial of such an appeal, under the code of 1892, § 1581, is *de novo.*

2. SAME. *Burden of proof.*

   The burden of proof, upon an appeal to the circuit court from the order of municipal authorities granting a license to retail intoxicating liquors, is upon the applicant for license to show that the petition is signed by a majority of the qualified voters; and this burden is not met by offering in evidence the order appealed from.

3. SAME. *Outsiders bound for costs.*

   It is not cause for the dismissal of an appeal from an order of municipal authorities granting license to retail intoxicating liquors, prosecuted by a resident citizen of the municipality, that other persons, not themselves qualified to appeal, have bound themselves to pay the costs in case the same be adjudged against the appellant.

4. SAME. *Qualified voters. Payment of taxes.*

   A person, otherwise a qualified voter, is not rendered an incompetent petitioner for the granting of license to retail intoxicating liquors, by mere proof of the fact that his taxes were paid by the dramshop keepers of the municipality. Taxes may be paid, so as to preserve one's qualification as a voter, by another than the taxpayer, if the payment be made not in the way of a bribe and with no understanding as to the voter's exercise of the right of suffrage·

5. SAME. *Taxes of what year to be paid. Constitution* 1890, *section* 241.

   The terms of the constitution of 1890, section 241, providing that one, to be a qualified elector, must have paid, on or before the first day of February of the year in which he shall offer to vote, all taxes, etc., require that the taxes of petitioners for license to retail intoxicating liquors, since qualified voters alone are competent petition-

ers, must have been paid for two years preceding the year in which they sign. Signing is analogized to voting.

6. SAME. *Publication. Attesting witnesses. Code of* 1892, § 1580.

The failure to publish the names of the attesting witnesses to certain signatures on the petition, made by proper mark of the signers, does not invalidate the publication under code of 1892, § 1580, requiring the petition to be published. It is the names of the petitioners that are to be published, not the names of attesting witnesses. To invalidate such a publication, the thing done or omitted must be something the doing or omission of which prevents, or which is done or omitted to prevent, the publication from being easily read.

7. SAME. *Mayor and aldermen as petitioners. Constitution* 1890, *section* 165.

The mayor and aldermen of a municipality are not so interested in the case as to disqualify them from hearing and deciding upon a petition for the grant of license to retail intoxicating liquors because of the fact that they have signed the petition. Constitution of 1890, section 165, providing that no judge shall preside on the trial of any case where he may be interested in the same, does not disqualify, because of a general interest in a public proceeding which the judge feels in common with the mass of citizens.

8. WITNESSES. *Violation of rule by.*

A witness who has been put under the rule, is not rendered incompetent by the fact that, without the knowledge of the party by whom he is introduced, he violated the rule and heard the evidence of other witnesses. Generally such misconduct goes only to the credit of the witness, but does not exclude him.

9. TRIALS. *Rules of practice.*

The object of a trial is the ascertainment of truth, and rules of practice must be so administered as to secure that end. ·

FROM the circuit court of Monroe county.

HON. NEWNAN CAYCE, Judge.

The appellants, Ferguson & Head, procured a petition to be presented to the municipal authorities of Aberdeen, in accordance with § 1578, code of 1892, asking the grant of a license to them to retail intoxicating liquors. The mayor and several of the aldermen, and many other qualified voters, signed the petition. A number of persons whose names were signed to the petition,

did not write, but made their marks, and their signatures, thus made, were attested by other persons.     In publishing the petition, under § 1580 of the code of 1892, the names of the attesting witnesses were omitted from the publication.

The municipal authorities granted the petition, and the present appellee, Brown, a resident taxpayer of the city, who had signed a counter petition, appealed from the order granting the license to the circuit court.     When the case reached the circuit court, Ferguson & Head, present appellants, moved to dismiss the appeal because no bill of exceptions was filed or objection taken to any of the orders of the municipal authorities, and because, as they averred, the appeal was not the appeal of Brown, but of persons who were neither residents, qualified electors, nor taxpayers of the municipality.     In proof of the facts averred in the motion, it was shown on the hearing that several parties who lived outside of the city had bound themselves to pay a part of the expenses of the appeal in the event of an adverse decision against Brown, and it was admitted that exception was not taken to the orders of the municipal authorities.     The motion was overruled.     When the case came on to be heard the question arose as to the burden of proof.     The court below held that it was upon the petitioners, Ferguson & Head, and that they were bound to show that their petition was signed by the requisite number of qualified voters of the city, and that they did not make out a *prima facie* case by the orders of the municipal authorities.     It was shown on the trial, over appellant's objection, that the dramshop keepers of the city had paid the taxes of a large number of the petitioners for the three years preceding.

The witnesses in the case were placed under the rule by order of court, but one of them, Parchman, violated the rule and heard some of the other witnesses testify.     When he was put upon the stand by appellant, the fact of his violation of the rule was made known, and objection being made by appellee to his testifying because thereof, the court refused to allow him to

give evidence as a witness, although the appellant had not procured, and was unconscious of the witness' misbehavior.   The judgment of the circuit court was in favor of appellee, Brown, and annulled the order of the municipal authorities granting license to appellants, Ferguson & Head, and they appealed to the supreme court.

*Houston & Reynolds*, for appellants.

The appeal should have been dismissed, for while it purported to be an appeal of A. J. Brown, a resident and elector of Aberdeen, as a matter of fact it was shown by proof, at hearing of motion, that it was his appeal in name only.   Citizens of Amory and other points were "feeing the piper."   They were paying the attorneys' fees and responsible for the court cost.   This makes a clear case of maintenance.   When this was brought to the notice of the court it should have dismissed the appeal.   *Barker* v. *Barker*, 14 Wis., 131.   See, also, 29 Wis., 502; 30 Wis., 228; *Weedon* v. *Wallace*, Meigs (Tenn.), 286; *Vincent* v. *Ashley*, 5 Hum. (Tenn.), 554; *Greenam* v. *Cohee*, 61 Ind., 201; *Allen* v. *Frazee*, 85 Ind., 283; *Orcult* v. *Petet*, 4 Den. (N. Y.), 233.   While the doctrine of champerty as to land has been abolished in our state (§ 2433, code 1892, and notes to code), still, as to maintenance of other's suits, quarrels, etc., the common law doctrine is a part of our law—modified, to a great extent—but still a part of it.   "Maintenance is an officious intermeddling in a suit that no way belongs to one, by assisting a party to it with money or otherwise to prosecute and defend it."   3 Am. & Eng. Enc. L., 68; 4 Black. Com., 134; 4 Kent's Com., 447; 6 Bacon's Ab., 410, 411.

The objection that the publication of original petition only published names of some parties, with their marks opposite, without publishing name of witness to same, is hypercritical.   *State, Edwards*, v. *Sumpter Co.*, 22 Fla., 1; *Polk Co.* v. *Johnson*, 21 Fla., 578; 11 Am. & Eng. Enc. L., note 1, p. 659.

Certainly, in order to be a qualified elector, it was not nec-

essary for parties to pay taxes for the three years, 1893, 1894, and 1895. Whether we consider the status of the parties as fixing their qualifications at the time they signed the petition, or at time petition was filed, or at time it was acted on, or at any other time, the taxes for both years, 1893 and 1895, did not have to be paid in order to qualify.

The court below committed an abuse of its discretion by refusing to allow Parchman to testify to contradict witness, Tubb. Though the rule had been invoked, yet it was in sound discretion—not the arbitrary, but the judicial discretion—of the court to permit this.

The next question is: Is a party who is otherwise a qualified elector, and whose taxes have, as a matter of fact, been paid and receipt given in his name, to be deprived of the right to vote solely and simply because he did not pay his own taxes in person, but that they were paid by another for him, when there is an entire absence of any evidence showing anything improper in said payment, either on part of the one whose tax is paid, or on part of the person who paid it? No constitution or law can be pointed to that, upon a proper construction, will warrant such a holding. The rule, "*qui facit per alium facit per se*," should not be wiped from the law books of the state by a strained construction. Counsel say that section 241 of the constitution prevents this payment by another, and, in lower court, dwell at length on "dark days of '75," "grandeur of new constitution," and intention of that convention to restrict suffrage. All this meets with our hearty approval, but when it is proposed to carry this intention of the convention to such extent as to prevent anyone paying his taxes, except by his own hand, it imputes such folly to that learned body that we must enter our protest. Counsel and the lower court seemed not to know it, but it is, nevertheless, a fact of almost universal knowledge that property, subject to taxation in Mississippi, is owned by parties living in other states of the Union and in Europe, and much taxable property is owned by citizens of the state who do not

reside in the county where the property is located, and whose business is such that it is almost impossible for them to go to the courthouse to pay their taxes in person, and a large part of the taxable property of the state is owned by people living in the country, who depend upon their merchants in town to pay their taxes for them, and charge to their account.   The constitutional convention, knowing this, would hardly have passed a provision requiring such parties to call in person on sheriffs and pay taxes.   Such a requirement would absolutely prevent the collection of one-fourth, if not more, of the revenue of the government, and discourage the owning of property in Mississippi on account of the trouble it would give at taxpaying time.   The constitution does not say, '' who has himself paid his own taxes on or before the first day of February,'' etc., or who has in person paid his taxes, or who shall produce to the officer satisfactory evidence that he has himself paid said taxes, or his own taxes in person, as it easily could have done if it was so intended.   We respectfully submit that the proposition is utterly untenable.   It would disqualify one-half, certainly one-fourth, of otherwise legal voters in the state, and lead to interminable confusion and unjust results as to the elective franchise. Taxes required to be paid by a voter may be paid by his agent, and a subsequent ratification is equivalent to a previous authority.   McCrary on Elec. (3d ed.), note 3 to sec. 75, and cases cited.   A provision that no person shall pay the tax for another, will not render vote of person for whom it was paid illegal.   5 Am. & Eng. Enc. L., 271, and cases; *United States* v. *Foster*, 4 Hughes (Cir. Ct. Rep.), 514.

As to the point made by our adversary that three of the board of aldermen, having signed petition of Ferguson & Head, were disqualified to vote on the hearing of the petition, we will say that the members of the board, though their taxes might be reduced by grant of license indirectly, were not interested in sense meant by § 919, code 1892, and section 165, constitution, cited in support of the contention.   No more interested than

members of the jury or any other citizen of the town.   12 Am.
& Eng. Enc. L., 41, 42, 45, 46.   Such a rule would disqual-
ify everyone from sitting.   At any rate, three of mayor and
board of aldermen did not sign Ferguson & Head's petition,
and all members of the board voted in favor of the grant of
license without dissenting vote.   The Nebraska cases cited are
not applicable in our state.   Our statute contemplates that all
qualified electors shall be counted for or against the grant of
license.   No one can remain passive, for, if a qualified voter does
not sign petition, then he is counted against grant of license.
Our statute says petition is to be signed by majority of qualified
voters.   Even it is decided in our state that petitioners for
license themselves may sign and be counted.   So can members
of board of aldermen; otherwise, they will all have to be counted
against the license.   And *Lemon* v. *Peyton*, 64 Miss., 161, de-
cided even where three members of board of supervisors, who
canvassed for or signed petition for election under local option
law, are not thereby disqualified from acting on such petition in
their official capacity.   One does not cease to be a citizen by
becoming a judge, and he may vote or petition as his judgment
dictates, and this does not thereby disqualify him from sitting as
judge in the matter which may come before him.   The interest
which disqualifies a judge is pecuniary, and not political.   The
members of the board who signed were not only qualified to
pass on grant of license, but, being qualified electors, they were
entitled to be counted in favor of grant if they signed the peti-
tion, just as three who did not sign are entitled to be counted
as not favoring grant.   But, if they are excluded in count as
going to make up requisite majority of qualified electors, still,
petition contains a majority of qualified electors.   We respect-
fully ask a reversal of the judgment of lower court, and for a
final judgment here for appellants.

*Clifton & Eckford*, for appellee.

The petition to retail liquors in this case was never published,

and this requirement of the statute being mandatory, the order of the board, and the license granted under it, are null and void. Code 1892, § 1580. The board of aldermen, or the circuit court on appeal, must be satisfied that the petition to retail contains a majority of the qualified voters of the city. Of course, this burden of proof, resting as it does on appellants, must be met by competent evidence. Code 1892, § 1578. *Rogers* v. *Hahn*, 63 Miss., 580. And this shows the importance of the variation between the petition and the pretended publication. The manner of making the proof, the witnesses, and even the evidence would be different. In proceeding under the petition, the rule of evidence would require the introduction of the attesting witnesses to these signatures, if living, or within the jurisdiction of the court. No other witness or evidence could be introduced on the issue until it was shown that the attesting witness was either dead or could not be found. When a case for the introduction of secondary evidence was made out, the proof would be confined alone to the evidence of the handwriting of the attesting witness. Code 1892, § 2468; *Wilkins* v. *Wells*, 9 Smed. & M., 335. And this rule applies to attested documents not required by law to be attested. 9 Smed. & M., 335; 1 Am. & Eng. Enc. L. & Eq., 941, and cases cited in note 2. In proceeding under the published copy, anyone who knew the signature, or mark of the signer, or who saw the document signed, or could otherwise legally prove the signature, would be a competent witness.

Four aldermen out of six and the mayor signed the petition in this case, which was addressed to them, and by them decided. We submit that the members of the board who signed this petition were disqualified to sit in this case, and the order and license issued by them is absolutely void. The slightest degree of pecuniary interest in the case disqualifies a judge from sitting in judgment on it. Here these judges had a direct pecuniary interest in this case, to the extent of an increased taxation of five dollars a thousand on the taxable values of city property,

which would have been a charge upon all their property. Constitution 1890, § 165; Code 1892, § 919; 12 Am. & Eng. Enc. L. & Eq., p. 46*b;* *Foster* v. *Frost,* 41 N. W., 647 (Neb.); *Powell* v. *Egan,* 60 N. W., 932 (Neb.); *The City of London* v. *Wood,* 12 Mod., 686; *City of Dallas* v. *Peacock,* 33 S. W., 220; *Medlin* v. *Taylor,* 13 So., 311; *Ex parte Bar of Ala.,* 8 So., 769; *Sauls* v. *Freeman,* 4 So., 527 (Fla.). We think the case at bar is clearly distinguishable from the case of *Lemon* v. *Peyton,* 64 Miss., 164.

For three successive years the dramshop keepers of Aberdeen, including the appellants, have contributed an equal sum to a common fund, with which they have paid the taxes of from sixty to ninety delinquents each year, for the purpose of qualifying these men to sign their liquor petitions. Without the signatures of these delinquents, liquor licenses could not have been obtained. It was a custom of the dramshop keepers to pay the taxes of these delinquents on the first of February of each year, and it appears that many of these delinquents relied on this custom. The taxes of these men were paid without authority from the delinquents. Can the voluntary payment of the taxes of these delinquents by a stranger, without his authority, or even knowledge, qualify such a party to vote? The payment of taxes of the two preceding years, on or before the first of February of the year in which he offers to vote, is required of all electors. It is a constitutional as well as a statutory requirement; and the language of both the constitution and statutes clearly indicates that the payment of these taxes must be made either by the elector himself or his agent.

WHITFIELD, J., delivered the opinion of the court.

There was no error in overruling the motion to dismiss the appeal of Brown from the order of the board of aldermen. Nor was there error in holding that the burden of proof was on appellants, since the trial in the circuit court was *de novo.* It was error to hold that the mere payment of taxes for certain

parties by Ferguson & Head disqualified them as signers of the petition. In *United States* v. *Foster*, 4 Hughes (U. S. Cir. Ct. Rep.), at page 520, it is said: "The clause in the constitution is one of that class of clauses which all legal and political maxims of construction require to be liberally interpreted and applied. If a citizen's tax has been paid, and he is otherwise qualified, then, by that fact, he becomes a qualified voter. If it is paid for him by another, not in the way of a bribe, and without an under-standing, express or implied, that he is to vote for a particular candidate, then the payment is legal and in every way proper." And the court, in that case, holds that whether the payment of the taxes was in violation of law or not, the fact of payment qualifies the citizen to vote, although the party paying must answer for his violation of the law.

It is not now necessary to pass on this proposition, or to hold what would be the effect of a clear showing that appellants had paid taxes of parties signing the petition on an agreement that, if so paid, they would sign for the purpose of qualifying them to sign. The testimony in this case shows that it was a very common occurrence for parties to pay the taxes of other parties; that perhaps one-fourth of the taxes of the county were paid in that way every year; that some of the persons whose taxes for certain years witnesses for appellee testified had been paid by appellants, had actually been paid for some of the years by themselves, and sometimes by others than ap-pellants; that many of the parties whose taxes were paid by appellants were not even registered in either the city or county; and the tax receipts of many persons whose taxes it was claimed were paid by appellants, were offered in evidence, showing *prima facie* that the parties themselves had paid them. The effect of such receipts could of course be overthrown—as in the case of other receipts—by proof; but this, as all the tes-timony we have recited, and all the testimony on this subject, as to who paid these taxes, and how, made an issue of fact for a jury; and yet the court charged the jury, peremptorily, to

find for the appellee.   The charge should not have been given.

Mere payment of taxes of parties who signed the petition, by appellants, did not disqualify them.   Payment of taxes may be made by an agent; may be made by one for another without his previous authority, since the other may "adopt and take advantage of the act."   All this is too clear for disputation.   No objection to this plain principle can exist in reason or authority; and, so far as authority is concerned, it is definitely settled.   *State* v. *Johnson*, 11 So. Rep., 862 (top), the able Chief Justice Raney delivering the opinion; *State* v. *Dillon*, 14 So. Rep., 396, in which case the court held that, even where the statute provided "the taxpayer himself paying his own poll taxes," etc., he could pay, nevertheless, through an agent— *qui facit per alium facit per se;* and the same doctrine is set out, as settled law, in 6 Am. & Eng. Enc. L., 271, notes 11, 12.

It was also error to refuse to permit Parchman to testify in rebuttal, because he had been under the rule.   *Sartorius* v. *State*, 24 Miss., 608, 609.   The modern and just doctrine on this subject is that, generally, the fact that a witness, placed under the rule, has violated it, goes to his credit, but does not exclude him.   The object of the trial is the ascertainment of the truth, and rules of practice, including this one, must be so administered as to secure that end.

It was also erroneous to permit the witness, Tubb, to testify as to what the records in evidence showed.   They spoke for themselves.

The court below correctly held that the failure to publish the name of the witness to certain signatures, made by proper mark of such signers, did not invalidate the publication.   The purpose of § 1580, code of 1892, was to give publicity to the names of those who sign such petitions, and the thing "done or omitted," which invalidates such publication, must be something the doing or omission of which prevents, or which is done or omitted to prevent, "the publication from being

easily read "—*e. g.*, crowding the names, or dispensing with proper capital letters, or things which produce like effect with these. The policy of the law was to discourage the traffic, by requiring those who might be willing to sign a petition which was not to be published, to have their names published. It is the names of those who petition for the license that are to be published, not the names of witnesses to their signatures. No just or reasonable construction of the statutue can hold otherwise, and the action of the learned circuit judge in this particular was correct. Mr. Justice Raney, speaking for the court, in *State v. Sumter Co.,* 22 Fla., at page 5, held, when the statute required the names and the marks to be published, that the omission of the marks did not invalidate the publication, saying, "The publication of the names identifies the petitioners sufficiently for all the practical purposes for which the publication was intended." We are not called on to decide upon that point, for all the marks here are published, and the only complaint is that the name of a witness to certain signatures, made by "proper mark," was not itself published. See, also, *Polk County* v. *Johnson*, 21 Fla., at page 584, holding that the affidavit to the petition need not be published.

The constitution, section 241, provides that one, to be a qualified elector, must "have paid, on or before the first day of February of the year in which he shall offer to vote, all taxes which may have been legally required of him, and which he has had an opportunity of paying, according to law, for the two preceding years," and must produce to the officer holding the election satisfactory evidence that he has paid said taxes. The petition in this case was presented and filed December 3, 1895, and the order granting the license was entered February 1, 1896. Plainly, the signers' taxes must have been paid for the years 1893 and 1894, the two years preceding the year 1895, in which they signed. The signing is analogized to voting. Signing is, in this sort of case, a voting for license. *State* v. *Johnson, supra.* One who offers to vote at a general election in Novem-

ber, must show that he has paid the taxes for the two years preceding that year, for the taxes of that year would not be delinquent until December 15, and he must have paid the taxes for the two years preceding the year in which he offers to vote.

It is insisted that the order of the board of aldermen granting license is void, because four of the six aldermen and the mayor signed the petition, the argument being that they were thus ''interested in the cause'' within the meaning of section 165 of the constitution. And many authorities are cited by counsel for appellee to sustain this proposition. Of these authorities, all of which we have carefully examined, two from Nebraska— *Foster* v. *Frost*, 41 N. W. Rep., 647, and *Powell* v. *Egan*, 60 N. W. Rep., 932—do squarely support the contention. But three of these cases— *City of Dallas* v. *Peacock*, 33 S. W. Rep., 220; *Medlin* v. *Taylor*, 13 So. Rep., 311, and *Sauls* v. *Freeman*, 4 So. Rep., 527—hold the exact opposite of the proposition contended for, on reasoning which seems to us unanswerable. The last named case, especially, in which the opinion of the court was delivered by Judge Raney, one of the ablest jurists in the country, contains a collection and analysis of the authorities, and is reasoned with great vigor.

In *Rogers* v. *Cypert*, decided by the supreme court of Arkansas, in 1881, the wife and children of the circuit judge had signed the original petition to the county court, under a local option liquor law, for the prohibition of the traffic, and an application was made to the circuit judge for certiorari to bring up the proceedings had in the county court on this petition. He refused to issue the writ, on the ground that he was disqualified from acting in the case, under the clause of the constitution forbidding a judge from presiding where either of the parties were connected with him by consanguinity or affinity within the degrees prescribed by law. A mandamus was then sued out to compel him to act, and the mandamus was granted on the ground that the ''interest'' of the wife and children was, though they were technically parties to the proceeding,

"only a common interest with the citizens in the establishment of a wholesome police regulation affecting the whole community, and that they were not, therefore, parties within the sense or spirit of the constitution.

In *Webster* v. *County of Washington*, 26 Minn., 220, it is held that "the ownership of lands contiguous to the line of a proposed county highway which may affect or enhance the value of such lands, is not such an interest as legally precludes the owner from acting as a member of the board of county commissioners, upon a petition signed by himself and others, for establishing the road," the road not passing over his land, and the only benefit accruing to him being the indirect benefit arising from his being a proprietor of land adjacent to the road.

To the same effect are *Bowman's case*, 67 Mo., 146; *Com.* v. *O'Neill*, 6 Gray, 343; and *Foreman* v. *Town of Marianna*, 43 Ark., 329, the true test, as we think, being announced in this case, the court saying: "It does not even appear that, on the whole (a case of annexation of territory), the result of annexation would be to increase or diminish taxes. But that is of no importance. This is not a suit of a personal nature concerning property or rights of persons. A general interest in a public proceeding, which a judge feels in common with a mass of citizens, does not disqualify; if it did, we might chance to go out of the state at times for a judge. The 'interest' which disqualifies a judge, under the constitution, is not the kind of interest which one feels in public proceedings or public measures. It must be a pecuniary or property interest, or one affecting his individual rights; and the liability or pecuniary gain or relief to the judge must occur upon the event of the suit, not result remotely, in the future, from the general operation of laws and government upon the status fixed by decision. . . . If he were thereby disqualified, he would be required to renounce all civic privileges."

This is the test approved in *Medlin* v. *Taylor, Judge, supra*, decided by the supreme court of Alabama in May, 1893. In

*City of Dallas* v. *Peacock*, *supra*, decided by supreme court of Texas in December, 1895, it was held that "a judge of the court of civil appeals who was a taxpayer in a certain city, was not interested in an action against such city for personal injuries caused by its negligence, within the meaning of the Texas constitution, article 5, section 11, providing that no judge shall sit in any case in which he may be interested." And while the precise point for decision here was not the precise point for decision in *Lemon* v. *Peyton*, 64 Miss., 164, the test as to disqualifying interest is held to be as in the cases we have approved. A member of a board of aldermen of a municipal corporation sustains no such relation to that municipal corporation as any officer of a private corporation for pecuniary gain does to such private corporation. A municipal corporation is an auxiliary of government, administering within its sphere governmental functions for the good of the local community. So far, then, as their mere legal right to act on the petition was concerned, we think that they had that legal right.

*For the reasons indicated the judgment is reversed and the cause remanded.*