SEAWELL v. LOUISIANA COCA-COLA BOTTLING CO.

———

(March 2, 1931. Opinion and Decree.)

———

N. H. Polmer, of New Orleans, attorney for plaintiff, appellant.

Harry M. Mayo, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Plaintiff sustained minor injuries as the result of an automobile accident claimed by her to have resulted solely from the negligent operation of a motortruck owned by defendant and operated at the time by one of its employees in the course of his employment.

Plaintiff, who was driving a Chevrolet automobile up Magazine street, claims that, as she reached the corner of Felicity street, at which corner she intended turning to the right, she was very close to the right-hand curb of Magazine street and that, just as she was turning into Felicity street, the Chevrolet was struck violently on the right running board by the motortruck of defendant which truck, she claims, was trying to pass to her right and between the Chevrolet and the curb.

The driver of the truck, on the other hand, states that he was proceeding up Magazine street close to the right-hand curb and that the Chevrolet driven by plaintiff was immediately to his left; that the front of his truck was about opposite the middle of the Chevrolet, when suddenly the driver of the latter vehicle turned it to the right and attempted to cross the path of the truck directly in front of it.

The trial court rendered judgment dismissing plaintiff's suit and she has appealed.

The only eye-witnesses to the accident were the two drivers, a Mr. Hulette, who was seated on the front seat of the car driven by plaintiff, and a Mr. Flores, who was standing across Magazine street, and of the four, plaintiff, Hulette and Flores

more or less agree, whereas Hardouin, the driver of the truck, stands alone in his version of the affair.

Nevertheless the story told by Hardouin is so thoroughly corroborated by the physical facts that we are convinced, as was the trial court, that his version is the correct one. One fact cannot be denied and on that fact all agree and that is that the Chevrolet was struck on its right side and not in the rear. This would manifestly have been impossible had it been close to the right-hand curb of Magazine street and had it made a short right-hand turn into Felicity street as it should have done in compliance with the traffic ordinance of the city of New Orleans which has been introduced in evidence and which is known as No. 7490 C. C. S., because there would have been no room between it and the curb for the truck.

With reference to right-hand turns this ordinance provides in paragraph 4 of article 1 as follows:

"Turning corners"
(a) "A vehicle turning into another street to the right shall turn the corner as near the right hand curb as practicable.
"In turning to the right at a street intersection, hug the right hand curb."

It is true that plaintiff and her two witnesses state that she did this, but, not only does the location of the damage to the Chevrolet prove that she did not, but a careful analysis of the testimony of these witnesses proves that their statements in this regard are inaccurate.

Hulette, in the early part of his testimony, stated that the Chevrolet was about four or five feet from the curb, but later stated that it was about one foot or one and a half feet from the car track and, since the nearest rail of the car track was shown to be seventeen feet, one inch from the curb, and since a Chevrolet is less than five feet in width the truth seems to be that, even according to Hulette, the Chevrolet was more than twelve feet from the curb.

The other witness, Flores, likewise at first stated that the Chevrolet was about four feet from the curb, but he, too, later said that it was about the "width of two tires" from the track, and it necessarily follows, as has been shown in connection with the testimony of Hulette, that there was in reality some twelve feet or more between the Chevrolet and the curb.

Mrs. Seawell herself, although she stated in one part of her testimony that her car was about three or four feet from the curb, later said that she did not know whether she was on the car track or not. The track, as we have stated, was seventeen feet one inch from the curb.

Plaintiff's charge that the truck crushed her Chevrolet into the curb on the downtown river corner is also manifestly impossible. There can be no doubt that the truck was on the right of the Chevrolet and that it was, therefore, between the Chevrolet and the curb into which plaintiff claims to have been crushed by the truck.

We have most carefully analyzed the evidence because of the numerical preponderance of witnesses on behalf of plaintiff, but have reached the conclusion that the accident did not and could not have occurred had the vehicles been located and

had they been proceeding as plaintiff claims they were.

Whether the light had just turned from red to green is of no importance, since all agree that it was green when the two vehicles entered the intersection.

Plaintiff contends that the chauffeur of defendant's truck should not have been permitted to testify because, although the witnesses were excluded from the courtroom when the matter was tried below, that witness, through a misunderstanding, was permitted to remain.

Defendant contends that under such circumstances it is within the discretion of the trial court to permit or to refuse to permit a witness to testify. While we have been cited no authority and have been able to find no Louisiana case directly in point, the authorities in other jurisdictions are overwhelmingly to the effect that a trial judge has discretion in such a situation and that this discretion will not be interfered with unless manifestly abused.

In Cyc. vol. 38, verbum Trial, p. 1371, we find the following:

"Disobedience to the Rule. The court may, in its discretion, permit a witness who has disobeyed the rule to testify, especially if the witness has not heard any of the evidence or if it does not appear that harm resulted therefrom. * * *"

Surely no harm resulted from the fact that Hardouin remained in the courtroom, since he was the only witness for defendant and could not have been influenced by what any other witness said since he disagreed with all of them.

"There was no error in refusing to allow the witness Larkin to be examined. He was placed under the rule, and afterwards came into the court room, and listened to the evidence. It was a matter of discretion with the court to allow him, after this, to testify or not. * * *" Thorn v. Kemp, 98 Ala. 417, 13 So. 749, 752.

"The matter of excluding witnesses from the courtroom during the trial of a cause is one within the discretion of the trial court, and whether a witness shall be excluded from the rule or whether one who has not been placed under the rule, but who nevertheless has remained in the courtroom during the taking of testimony, as was true in the case of Antonio Cisceroni, shall be permitted to testify notwithstanding the rules are all matters within the discretion of the trial court, and will not be interfered with by an appellate court, unless it has been made clearly to appear that the trial court has abused its discretion to the injury of the complaining party." Romano v. Palazzo, 83 Fla. 243, 91 So. 115, 116.

"It was also error to refuse to permit Parchman to testify in rebuttal because he had been under the rule. Sartorious v. State, 2 Cushm. [24 Miss.] 608, 609. The modern and just doctrine on this subject is that generally the fact that a witness placed under the rule has violated it goes to his credit, but does not exclude him." Ferguson v. Brown, 75 Miss. 214, 21 So. 603, 605.

Furthermore, our conclusion has been reached because of our belief that plaintiff's version is impossible and we cannot see that any other result could be reached even if the testimony which is objected to was expunged entirely from the record.

The judgment appealed from is affirmed.