# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-EC-01669-SCT

*KENNETH K. UPTON*

*v.*

*ELAINE T. MCKENZIE*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/24/1999 |
| TRIAL JUDGE: | HON. W. HOLLIS MCGEHEE, II |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GARLAND D. UPTON |
| ATTORNEYS FOR APPELLEE: | SAMUEL W. KEYES, JR. |
| | TOMMIE S. CARDIN |
| | JULIE HUSSEY |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED- 06/01/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/22/2000 |

**BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Kenneth K. Upton appeals to this Court from a contest of the primary election for the office of supervisor, District Four, Marion County, Mississippi, held August 3, 1999, wherein the Circuit Court of Marion County ruled against him. Elaine T. McKenzie, one of fourteen write-in candidates, received 65.3% of the vote, and Upton, whose name was printed on the ballot, received 32.1% of the vote. The Marion County Democratic Executive Committee ("DEC") refused to consider the write-in votes cast for McKenzie. However, the Circuit Court of Marion County found that McKenzie should be certified the winner of the election. Upton appeals from the judgment of the circuit court.

¶2. After careful consideration, we hold that the circuit court was correct in certifying McKenzie as the winner of the election contest for Supervisor of District Four of Marion County.

## STATEMENT OF FACTS

¶3. Billy Ray McKenzie, husband of Elaine McKenzie, and Kenneth Upton were the only qualifying candidates for the Democratic Party nomination for the office of supervisor of Marion County, Mississippi, District Four. At the time, Billy Ray McKenzie was completing a previous term on the Marion County Board of Supervisors. The deadline for qualification was March 1, 1999, and the election was to be held

on August 3, 1999. On May 18, 1999, Billy Ray McKenzie died. At the time of his death, the ballot for the primary had not yet been printed. After his death, Elaine McKenzie (hereinafter "McKenzie") served the unexpired term of her husband and campaigned as a write-in candidate for the office of supervisor.

¶4. In the primary election, McKenzie received 1,194 votes from electors who wrote her name on the official ballot and put an "X" opposite thereto. Upton, whose name was already printed on the ballot, received 586 votes. McKenzie received 65.3% of the vote, while Upton received 32.1% of the vote.

¶5. The Marion County DEC refused to consider the write-in votes cast for McKenzie and instead certified Upton as the Democratic Party nominee. McKenzie filed a petition for primary election contest before the Marion County DEC on August 4, 1999. Apparently relying on an opinion of the Attorney General which states that Miss. Code Ann. § 23-15-365 (1990) does not allow for the casting of write-in votes where a candidate dies prior to the printing of the ballot, Op. Miss. Att'y Gen. 1999-0263, 1999 WL 529166 (June 3, 1999), the Marion County DEC refused to grant the requested relief. On August 24, 1999, McKenzie filed a Protest and Petition for Judicial Review of Election Contest, or Alternatively, Complaint for the Declaratory Judgment in the Circuit Court of Marion County. The petition was not certified by two practicing attorneys as required by Miss. Code Ann. § 23-15-927 (1990), but was signed by counsel. On September 7, 1999, Upton filed a Motion to Dismiss or Alternatively Motion for Summary Judgment as well as his responsive pleading. The same day, prior to the service of Upton's motion and answer, McKenzie filed an amended petition which was properly certified. McKenzie filed a Motion for Summary Judgment on September 21, 1999.

¶6. On August 26, 1999, this Court appointed the Honorable Hollis McGehee, Chancellor for the Fourth Chancery Court District, to preside over the election contest pursuant to Miss. Code Ann. § 23-15-929 (1990). Subsequent to a hearing, the circuit court found that McKenzie should be certified the winner of the primary election. Unopposed, McKenzie subsequently won the general election held on November 2, 1999. From the judgment of the circuit court, Upton appeals, raising the following issues:

**I. THE TRIAL COURT ERRED IN DENYING UPTON'S MOTION TO DISMISS.**

**II. THE ATTORNEY CERTIFYING THE PETITION WAS DISQUALIFIED.**

**III. MISS. CODE ANN. § 23-15-365 DOES NOT ALLOW FOR WRITE-IN CANDIDATES UNDER THE CIRCUMSTANCES EXISTING AT THE TIME OF THE ELECTION.**

## STANDARD OF REVIEW

¶7. In this case, there is no dispute of fact. In reviewing errors of law, this Court proceeds de novo. *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996) (citing *Bilbo v. Thigpen*, 647 So. 2d 678, 688 (Miss.1994); *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss.1991); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss.1990)).

## DISCUSSION OF LAW

**I. THE TRIAL COURT ERRED IN DENYING UPTON'S MOTION TO DISMISS.**

¶8. Upton filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment with the circuit court,

arguing, *inter alia*, that the circuit court was without jurisdiction to hear the case. Upton contends that, according to Miss. Code Ann. § 23-15-927 (1990), a county executive committee has authority to investigate only irregularities in the ballot box or fraud in the election process. Upton argues that these irregularities are limited to such things as "discrepancies in vote counting, the number of voters signing the registration book as compared to the number of ballots in the ballot box, illegal votes, and the security of the ballot box." Upton asserts that because McKenzie does not allege any of the irregularities defined in § 23-15-927, the circuit court was without jurisdiction to hear the case.

¶9. This assignment of error is without merit. Section 23-15-927 does not define any irregularities which may be reviewed by a county executive committee, but rather provides for the filing of a petition in the circuit court where a county executive committee delays or denies relief to the petitioner. McKenzie correctly notes that nothing in Miss. Code Ann. § 23-15-921 (1990), the operative statute, limits the committee's inquiry regarding a contest of a primary election to allegations of fraud. Section 23-15-921 provides:

> Except as provided by Section 23-15-961, a person desiring to contest the election of another person returned as the nominee of the party to any county or county district office, or as the nominee of a legislative district composed of one (1) county or less, may, within twenty (20) days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which the election was held, <u>setting forth the grounds upon which the primary election is contested</u>; and it shall be the duty of the executive committee to assemble by call of the chairman or three (3) members of said committee, notice of which contest shall be served five (5) days before said meeting, and after notifying all parties concerned <u>proceed to investigate the grounds upon which the election is contested</u> and, by majority vote of the members present, declare the true results of such primary.

(emphasis added). The wording of this statute simply does not limit an executive committee's review of an election to instances where the contest is based on grounds of fraud and certain irregularities. Upton's contention that the investigatory powers of county executive committees are limited to such things as "discrepancies in vote counting, the number of voters signing the registration book as compared to the number of ballots in the ballot box, illegal votes, and the security of the ballot box" is clearly without merit. Thus, the circuit court did not err in denying Upton's motion to dismiss.

## II. THE ATTORNEY CERTIFYING THE PETITION WAS DISQUALIFIED.

¶10. Upton also alleged in his motion to dismiss that the circuit court lacked jurisdiction to hear this matter because McKenzie failed to obtain proper certification for her petition to the circuit court. Miss. Code Ann. § 23-15-927 (1990) provides that an election contestant may seek judicial review of the action of a county executive committee by filing a petition in the circuit court of the county involved. In pertinent part, the statute provides:

> But such petition for a judicial review shall not be filed unless it bear the certificate of two (2) practicing attorneys that they and each of them have fully made an independent investigation into the matters of fact and of law upon which the protest and petition are based and that after such investigation they verily believe that the said protest and petition should be sustained and that the relief therein prayed should be granted . . . .

*Id.* The purpose of the certification requirement is "to prevent, or at least to minimize, the bringing before the courts of captious or unsubstantial political contests of primary elections ...." ***Harris v. Stewart***, 187 Miss. 489, 506, 193 So. 339, 343 (1940). The affidavits "prevent persons declared party nominees from being harassed with trivial applications for judicial review thereof, and contemplates, as the word 'independent' connotes, a certificate by lawyers who are without bias or prejudice." ***Pittman v. Forbes***, 186 Miss. 783, 789, 191 So. 490, 490 (1939).

¶11. One of the attorneys certifying McKenzie's petition to the circuit court was Joseph M. Shepard. Shepard served as attorney for the Marion County Board of Supervisors before and after the death of Billy Ray McKenzie. Again, Elaine McKenzie served the unexpired term of Billy Ray McKenzie. Upton argues that Shepard's serving as attorney to a board on which Elaine McKenzie was a member and to which she sought election created a conflict of interest, resulting in the disqualification of Shepard as a certifying attorney. Because the certification requirement is jurisdictional, Upton contends that the circuit court lacked jurisdiction to hear the case. *See **Pearson v. Jordan***, 186 Miss. 789, 792, 192 So. 39, 40 (1939) (noting that where the certification requirement is not met, the lower court is without jurisdiction to hear the case, and this Court is without jurisdiction to hear the appeal).

¶12. This Court has stated that "[t]he only facts which would disqualify a certifying attorney are: Employment of the attorney, past, present, contingent or prospective, by or for the contestant as his attorney in respect to the matter involved in the contest, or such facts as would disqualify a judge under Section 165, Constitution 1890." ***Harris***, 187 Miss. at 504-05, 193 So. at 343. This Court has addressed the first prong of this test -- attorneys who are in fact representing the contestant with respect to the election contest -- numerous times. In ***Harris***, this Court found that an attorney who was a close friend of the petitioner's attorney whom he sometimes associated as counsel on cases and whose offices happened to be on the same floor of the building in which both worked, was not disqualified from serving as a certifying attorney in the petitioner's case. In ***McDaniel v. Beane***, 515 So. 2d 949 (Miss. 1987), this Court found that a member of the law firm representing a contestant is not eligible to make the certification required by § 23-15-927. This Court held in ***Esco v. Scott***, 735 So. 2d 1002 (Miss. 1999), that an attorney who is "of counsel" to the firm in which the petitioner's attorney is a partner is not eligible to make the certification. Shepard does not represent McKenzie in respect to the election contest, nor is there any indication that he is in any way associated with McKenzie's counsel. Thus, Shepard is not disqualified under the first prong of the ***Harris*** test.

¶13. Though certainly a close issue, this Court concludes that Upton has also failed to demonstrate that the certification by Shepard violates the second prong of the ***Harris*** test, that is, the existence of facts which would disqualify a judge under Article 6, Section 165 of the Mississippi Constitution of 1890. Article 6, Section 165 provides:

> No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties. . . .

Section 165 does not prohibit Shepard from acting as certifying attorney. Upton does not allege that Shepard is connected to either of the parties by affinity or consanguinity, or that he has a pecuniary or property interest in the outcome of the contest, or an interest affecting his individual rights. *See **McLendon v. State***, 187 Miss. 247, 191 So. 821, 823 (1939) (citing ***Ferguson v. Brown***, 75 Miss. 214, 227, 21

So. 603 (1897); *Cashin v. Murphy*, 138 Miss. 853, 866, 103 So. 787 (1925) (noting that only such interests disqualify a judge under Section 165)).

¶14. Since its 1940 decision in *Harris*, this Court has adopted the Code of Judicial Conduct. Thus, a judge may be disqualified under Section 165 of the Mississippi Constitution as well as under Canon 3 C of the Code of Judicial Conduct.[(1)] This Court has not heretofore analyzed the disqualification of a certifying attorney under the Code of Judicial Conduct. However, because the Code of Judicial Conduct did not exist at the time the *Harris* test was promulgated, we find that it is appropriate to graft such an analysis into the *Harris* test. This Court has stated, "When the conduct of a judge is being examined according to the dictates of a canon of the Code of Judicial Conduct, 'the Canon enjoys the status of law....'" *Jenkins v. State*, 570 So. 2d 1191, 1192 (Miss. 1990) (quoting *Collins v. Dixie Transp., Inc.*, 543 So. 2d 160, 166 (Miss. 1989)).

¶15. A judge is presumed qualified and unbiased. *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss.1997); *Turner v. State*, 573 So. 2d 657, 678 (Miss.1990). This presumption may be overcome only by evidence showing beyond a reasonable doubt that the judge was biased or not qualified. *Id.* This Court has adopted an objective test in determining whether a judge should have disqualified himself or herself under Canon 3 C: "If a reasonable person, knowing all of the circumstances, would doubt the judge's impartiality, the judge is required to recuse him or herself from the case." *Jenkins*, 570 So. 2d at 1192 (quoting *Rutland v. Pridgen*, 493 So. 2d 952, 954 (Miss. 1986)).

¶16. Canon 3 C of the Code of Judicial Conduct provides, in pertinent part:

> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]
>
> (b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....

It should be noted that Canon 3 C(1) states a general standard and that subparagraphs (a) and (b) are but illustrations which do not exhaust the field. *Buchanan v. Buchanan*, 587 So. 2d 892, 896 (Miss. 1991). And again, the question is not whether the judge, in fact, was impartial, but whether a fair-minded person, knowing all of the facts, might reasonably question the judge's impartiality. *Id.*

¶17. Canon 3 C(1)(b) is inapplicable as Shepard does not represent McKenzie in the election contest. However, Shepard does represent the board to which McKenzie sought election - a board on which she has served the remainder of her husband's term. Thus, the remaining question is whether Canon 3 C(1)(a) precludes Shepard from serving as certifying attorney. Certainly, McKenzie, in the exercise of caution, should have sought a certifying attorney with a lesser connection to the proceedings at hand. Nevertheless, we conclude that Shepard's employment as attorney for the board of supervisors does not disqualify him from serving as certifying attorney. Neither Shepard, nor the body which he represents, have an effect on or a legally cognizable interest in the outcome of the present contest. Upton alleges no facts indicating that Shepard has a personal interest or bias in the matter, save the assertion that Shepard would have

jeopardized his employment had he denied McKenzie the certification. This claim, however, is unsubstantiated. In ***McFarland v. State***, 707 So. 2d 166 (Miss. 1997), this Court stated, "The mere fact that a trial judge hears a case, even an election case, in a county where the judge may sometime in the future run for reelection, does not alone give rise to a reasonable doubt as to his impartiality." ***Id.*** at 180 (analyzing the impartiality of a trial judge under Canon 3 C(1)). Likewise, Shepard would not be disqualified from serving as trial judge in the election contest at hand, even where Shepard's employment contract presumably must be renewed or discontinued sometime in the future. The facts alleged alone do not mandate disqualification under Canon 3 C.

### III. MISS. CODE ANN. § 23-15-365 DOES NOT ALLOW FOR WRITE-IN CANDIDATES UNDER THE CIRCUMSTANCES EXISTING AT THE TIME OF THE ELECTION.

¶18. Upton argues that Miss. Code Ann. § 23-15-365 (1990) allows for a write-in candidate only where there is one person qualified for a particular office and that one qualified person dies, resigns, withdraws or removes his or her name <u>after</u> the printing of the primary ballot. Upton contends that if the death of a candidate occurs prior to the printing of the ballot, as in the case at hand, the county executive committee may nominate a substitute candidate and have his or her name printed on the ballot. Upton contends that, in the latter instance, § 23-15-365 does not allow for a write-in candidate. Upton thus argues that the DEC correctly disregarded the write-in votes received by McKenzie and refused to certify McKenzie as the Democratic nominee.

¶19. Section 23-15-365 provides:

> There shall be left on each ballot (1) blank space under the title of each office to be voted for, and in the event of the death, resignation, withdrawal or removal of any candidate whose name shall have been printed on the official ballot, the name of the candidate duly substituted in the place of such candidate may be written in such blank space by the voter.

A corollary to § 23-15-365, Miss. Code Ann. § 23-15-333 (1990) states the duties of the county executive committee with regard to the printing of the ballots and provides, in pertinent part:

> The county executive committee shall have printed all necessary ballots, for use in the primary elections. The ballots shall contain the names of all the candidates to be voted for at such election, and there shall be left on each ballot one (1) blank space under the title of each office for which a nominee is to be elected; and in the event of the death of any candidate whose name shall have been printed on the ballot, the name of the candidate duly substituted in the place of the deceased candidate may be written in such blank space by the voter....

¶20. Upton argues that the operative phrase in the above statutes is "duly substituted." He contends that the only "duly substituted" candidate is a candidate nominated by the county executive committee upon the death of the only qualifying candidate subsequent to the printing of the ballot but before the primary election. Upton arrives at this position by arguing that §§ 23-15-365, 23-15-333, and 23-15-317 must be read together. Section § 23-15-317 provides:

> If any person nominated for office in a primary election shall die, be removed after his nomination or withdraw or resign from his candidacy for a legitimate nonpolitical reason as defined in this section,

and such vacancy in nomination shall occur between the primary election and the ensuing general election, then the municipal, county or state executive committee with which the original nominee qualified as a candidate in the primary election shall nominate a nominee for such office. Where such a party nominee is unopposed each political party registered with the State Board of Election Commissioners shall have the privilege of nominating a candidate for the office involved. Such a nominee shall be duly certified by the respective executive committee chairman....

¶21. McKenzie asserts that Upton's analysis is flawed and is not the proper interpretation that should be afforded § 23-15-365. McKenzie argues that § 23-15-317 is inapplicable to the case at hand in that it applies only where a candidate dies after receiving the party's nomination in the primary election, but prior to the general election. McKenzie contends that the plain language of § 23-15-365 and a reasonable interpretation thereof mandate the conclusion reached by the circuit court. McKenzie asserts that Upton's interpretation of § 23-15-365 is merely an attempt to bootstrap a procedure meant to apply where the death of a nominee occurs after the primary election to the scenario where a candidate dies prior to the primary election. McKenzie contends that to do so would undermine the right of the voters to choose nominees of their choice and would potentially pit political parties against their own previously qualified candidates. The circuit court agreed that Upton's analysis was both erroneous and unreasonable and found as follows:

The responsibility for printing the necessary ballots in a primary election is placed upon the Democratic Executive Committee of each county and in this case that would be one of the defendants, DEC. This is pursuant to Section 333.

****

The Court finds that to interpret Section 365 in such a way as to preclude the application of 365 in this case where the ballots had not been printed prior to the death but to say it would apply, as Mr. Upton would have the Court to rule, in a case where the ballots had been printed before the death is an unreasonable and inappropriate application or construction of this statute. As ruled by the Supreme Court in *McKenzie v. Boykin*, 71 So. 382, 111 Miss. 256 (1916), the application of the "write-in candidate" provisions are appropriate in the event of a death of a candidate who has qualified to run for a particular office. Further, to apply the matter as Mr. Upton would have the Court to do is to reach such an absurd result that the issue would boil down to when the ink is actually applied to the paper. Such an interpretation could get in to such unexpected and unintended issues as to when the printer himself decides to print and the reliability of the printing press, etc., etc. and such could determine whether a particular candidate could be a write-in candidate. Obviously, should not be the construction applied to Section 365. A reasonable and logical reading of Section 365 would have the Court rule and the Court does hereby rule that Billy Ray McKenzie, having qualified to run for the office and being entitled to have his name placed upon the ballot and he having thereafter died before the primary election, it was and is appropriate for Mrs. McKenzie to be substituted by "write-in" ballot.

¶22. The trial court correctly held that Upton's interpretation of § 23-15-365 is erroneous. Upton's assertion, that the only "duly substituted" candidate is a candidate nominated by the county executive committee after the death of the only qualifying candidate subsequent to the printing of the ballot but before the primary election, is simply without support. First, there is no support in any section of this State's

election statutes for the assertion that a voter may cast a write-in vote only where the candidate who died was unopposed for a particular office. In fact, both § 23-25-365 and § 23-15-333 provide for the casting of write-in votes upon the death of "any candidate." Section 23-15-317 is the sole statute which contains any mention of a candidate being unopposed. Specifically, § 23-15-317 states that where a candidate is nominated according to the provisions of § 23-15-317, and where the nominee is unopposed, each political party registered may nominate a candidate for the office involved. Clearly, this provision is irrelevant when dealing with the casting of write-in votes under § 23-15-333 and § 23-15-365.

¶23. Furthermore, Upton's assertion that a "duly substituted" candidate is a candidate nominated by the county executive committee is simply without support in any section of the State's election laws. The sole statute allowing for the nomination of a candidate by the executive committee upon the death of a nominee is § 23-15-317. Section 23-15-317 is inapplicable in the case at hand as § 23-15-317 applies only where the party's nominee dies, withdraws, or resigns after the primary election but before the general election. Again, Billy Ray McKenzie died prior to the primary election.

¶24. Upton relies on *Cummings v. Benderman*, 681 So. 2d 97 (Miss. 1996), for the assertion that § 23-15-333 gives the county executive committee the authority to nominate a candidate if the only qualifying candidate dies after the ballot was printed but before the primary election. *Cummings* involved an interpretation of § 23-15-317, and Upton argues that § 23-15-333 gives the executive committee the same authority as is granted § 23-15-317. In *Cummings*, Harvey Benderman and Thomas Park were the only persons to timely file as candidates for the Democratic Party's nomination for the District One seat in the Mississippi House of Representatives. Benderman died before the state executive committee could convene to certify the qualifications of the two candidates. The committee, in accordance with Miss. Code Ann. § 23-15-299(6) (1990), declared Park, the sole remaining candidate, to be the party's nominee.[2] However, after he was declared to be the nominee, Park withdrew from the election. At that time, the committee selected Cummings as its nominee. Cummings won the Democratic primary election, despite a write-in campaign by Betty Benderman and Lamar Skinner, and went on to win the general election as well. The trial court found that the executive committee followed the wrong procedure in naming Cummings as the Democratic nominee. On appeal, the committee argued that its actions were consistent with the procedure provided by § 23-15-317. This Court noted that § 23-15-317 applies only to candidates who withdraw after a primary and not before. *Id.* at 102. The Court stated that the manner in which the committee selected Cummings was not authorized in any section of the election code. *Id.* However, because the committee "acted in good faith and arguably within the scant guidelines provided by the Legislature," the Court declined to hold that, as a matter of law, the committee acted in a violation of the provisions of applicable statutory law by placing Cummings's name on the ballot. *Id.* at 103.

¶25. Upton argues that § 23-15-333 gives the county executive committee the same authority that § 23-15-317 gives to the state executive committee as enunciated in *Cummings*. First, we note that this Court in *Cummings* did not hold that the state executive committee's actions were authorized by § 23-15-317. To the contrary, the Court stated that § 23-15-317 applies only where a candidate dies after the primary but prior to the general election and that the committee's actions in nominating Cummings were not authorized by any section of the election code. Second, there is absolutely no support for Upton's assertion that § 23-15-333 authorizes the county executive committee to proceed in the same manner as § 23-15-317 regardless of when the death of the candidate occurred. In fact, this Court in *Cummings* specifically found that the procedure authorized by § 23-15-317 applies only where a candidate dies after having been nominated in the primary election but prior to the general election.

¶26. Upton also contends that *McKenzie v. Boykin*, 111 Miss. 256, 71 So. 382 (1916), mandates that there is no provision for write-in votes in the case at hand. In *McKenzie*, N.B. Boykin was selected in the primary election to be his party's nominee for the office of county supervisor. In the general election, W.E. McKenzie garnered the majority of the votes as a write-in candidate. The lower court held that the election commissioners properly excluded the write-in votes. The issue before this Court was whether a voter in a general election may vote for anyone he or she chooses by writing the name of his or her choice for the office, even where no candidate has died. The Court examined Miss. Code § 4160(2) (1906), from which today's § 23-15-365 is derived and which provided:

> One blank space under the title of each office to be voted for, and in the event of the death of any candidate whose name shall have been printed on the official ballot, the name of the candidate duly substituted in the place of such deceased candidate, may be written in such blank space by the voter.

The Court concluded that § 4160 allows a voter to utilize the blank space provided on the ballot to cast a write-in vote only when a candidate dies. *McKenzie*, 111 Miss. at 261, 71 So. at 384. Thus, the Court stated that the statute negatives the right of a voter to write the name of a candidate upon the ballot and vote for him or her except in case of death. *Id*.

¶27. Upton contends that, as in *McKenzie*, there is no provision for write-in votes in the case at hand. This argument is erroneous. In *McKenzie*, there was no provision for write-in votes because no candidate had died. In the case at hand, there is clearly a provision for write-in votes as Billy Ray McKenzie, a qualified candidate for the primary election, died prior to the election. In *McKenzie*, this Court stated that "[t]o hold that the voter has a right to write the name of his choice on the ballot would render this section absolutely unenforceable." *Id.* at 263, 71 So. at 385. Upton asserts that this statement applies equally in the case at hand. Applying the facts of *McKenzie*, to hold that the voter has a right to write the name of his choice on the ballot in any circumstance would render the write-in provision unenforceable. Certainly, in the case at hand, to hold that the voter has a right to cast a write-in vote in a circumstance provided for by § 23-13-365 is to enforce that statute as written, not to render that statute unenforceable.

¶28. Upton's argument that § 23-15-365 allows write-in candidates only where a candidate dies after the ballot has been printed is likewise erroneous. Upton contends that the phrase "in the event of the death ... of any candidate whose name shall have been printed on the official ballot" in § 23-15-365 means that the name of a candidate may be written in the blank space on the ballot only where a candidate died after the ballot was printed. This Court has noted that where the language of a statute is plain, this Court will interpret a statute as written. *Mississippi State Dep't of Human Servs. v. Forrest County Youth Court*, 663 So. 2d 580, 581 (Miss. 1995). Webster defines "shall" as "should," "ought to," "must." Webster's Dictionary 2085 (3d ed. 1976). Certainly, it can be said that, but for Billy Ray McKenzie's death, his name "should have been printed" on the ballot, "ought to have been printed" on the ballot, or "must have been printed" on the ballot. This Court has noted that it has no right to add anything to or to take anything from a statute where the language of the statute is plain and unambiguous as to do so would be infringing on the domain of the Legislature. *Sheppard v. Mississippi State Highway Patrol*, 693 So. 2d 1326, 1328 (Miss. 1997). Upton's interpretation of § 23-15-365 would require this Court to graft the requirement that the deceased candidate be the sole qualifying candidate and the requirement that the county executive committee nominate the candidate whose name is to be written in by the voter. Again, there is no support for such in this State's election laws.

## CONCLUSION

¶29. The arguments brought by Upton on appeal to this Court are without merit. Therefore, this Court affirms the holding of the circuit court that the Marion County Democratic Executive Committee incorrectly certified Upton as the Democratic nominee for the office of Supervisor of Marion County, District Four. The judgment of the Marion County Circuit Court is affirmed.

¶30. **AFFIRMED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**

1. A judge may also be disqualified under Miss. Code Ann. § 9-1-11 (1991), which, in addition to requiring disqualification for relation of the judge by affinity or consanguinity, requires disqualification where the judge may have been of counsel. Section 9-1-11 is not applicable here as Shepard is not of counsel.

2. Section 23-15-299(7) provides that "[w]here there is but one (1) candidate, the proper executive committee when the time has expired within which the names of candidates shall be furnished shall declare such candidate the nominee." Miss. Code Ann. § 23-15-299(7) (Supp. 1999).